**Yvonne Marie BOYD et al.**

v.

**POINTE COUPEE PARISH SCHOOL BOARD et al.**

**Civ. A. No. 3164.**

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Sept. 20, 1971.

A. P. Tureaud, A. M. Trudeau, Jr., Ernest N. Morial, New Orleans, La., Jack Greenberg, Norman Amaker, and Norman Chachkin, New York City, for plaintiffs.

Frank D. Allen, Jr., Patrick Hardin, New Orleans, La., Murphy W. Bell, Baton Rouge, La., for plaintiff-intervenor United States.

Samuel C. Cashio, Dist. Atty., Maringouin, La., John F. Ward, Jack P. F. Gremillion, Atty. Gen. of La., Baton Rouge, La., for defendants.

E. GORDON WEST, Chief Judge.

This matter came on for hearing on a prior day on the motion of the United States of America, intervenor herein, for supplemental relief when, after hearing the evidence and arguments of counsel, the Court took time to consider. Now, after due consideration, the motion of the United States of America for supplemental relief is denied.

REASONS

The evidence in this case shows that this Court issued an order on July 25, 1969, requiring implementation of integration plans for the Pointe Coupee Parish schools. This order and plan was affirmed by the Fifth Circuit Court of Appeals on January 6, 1970, Boyd v. United States, 420 F.2d 379. Certain modifications to this plan were requested by the School Board which, by order of this Court dated August 21, 1970, were granted. That order was appealed and on November 13, 1970, the Fifth Circuit Court of Appeals dismissed the appeal.

Pursuant to these orders, all students in the Pointe Coupee Parish School System were assigned to schools on a racially non-discriminatory basis. If all students had, in fact, continued to attend the schools to which they had been assigned, integration of the schools would have been complete, and substantially in accordance with existing ratios of whites to negroes in the system. But as a result of these assignments, some 1800 or more students left the public school system to attend private schools. The result was the re-establishment of three all negro schools in the system. None of the white students who left these schools were permitted to attend other schools in the system. They left the public school system which, of course, they had a legal right to do. Consequently, the re-establishment of the colored schools

in the Pointe Coupee Parish School System has in no way been brought about by State action. The segregation resulting is purely de facto in nature. It would be foolhardy to continue to re-shuffle the student population every time some students exercised their legal right to leave the public school system in an effort to keep "spreading" the white students among all of the schools. Somewhere the line must be drawn between forced segregation and segregation which comes about by lawful choice. The point has been reached in the Pointe Coupee Parish System where this Court must conclude (1) that the orders of this Court pertaining to integration of schools have been complied with; (2) that the Pointe Coupee Parish School Board *is* operating a unitary, non-discriminatory school system; (3) that there *is no* State action involved in the re-segregation of certain schools in the system; and (4) that whatever re-segregation of schools now remains is no different from that remaining in many northern areas—it is purely de facto, resulting from the exercise of a legal right by some white students to leave the public school system. This is simply an inevitable result of forced integration of schools and does not give rise to the supplemental relief sought by the Government. The Pointe Coupee Parish School Board has not returned to a freedom of choice plan. Students in that system must attend the school to which they are assigned if they are to remain in the system. And if they do so, all schools would be integrated in strict accordance with the law. In other words, the students do not have any freedom of choice insofar as what school in the system they will attend. If they attend any, they must attend the one to which they have been assigned. But they do, of course, have the choice of withdrawing from the system entirely and attending private schools if they wish. The fact that many of them exercise this choice does not supply any merit to the contention that a dual system of schools has been re-established by the School Board.

If the students who have left the system choose to return, they will, once again, be assigned to a school in accordance with the integration plan under which the School Board is forced to operate. Thus, the fact that certain schools have become re-segregated involves no State action of any kind.

There is no credible evidence to show that there has been any racial discrimination in the hiring or firing of supervisory personnel. The evidence conclusively shows that supervisory personnel *have* been properly integrated and that race is no longer a consideration in the employment of such personnel. If race is not a factor, and if using qualifications as the primary criteria results in an imbalance between white and negro personnel, so be it. There is nothing wrong with such a result where no discriminatory intent or plan has been shown. No such plan or intent has been shown here. The Pointe Coupee Parish School System is now, in fact, a unitary, non-discriminatory school system within the meaning and intent of federal law. The supplemental relief sought is therefore denied.