Houston BASSETT

v.

ATLANTA INDEPENDENT SCHOOL DISTRICT et al.

Civ. A. No. 1550.

United States District Court,
E. D. Texas,
Marshall Division.

Aug. 22, 1972.

Larry Watts, Houston, Tex., for plaintiff.

Charles E. Thompson, Atlanta, Tex., Franklin Jones, Jr., Marshall, Tex., for defendants.

MEMORANDUM OPINION
AND ORDER

JUSTICE, District Judge.

When desegregation came to the Atlanta Independent School District in the fall of the 1970–71 school year, Houston Bassett, the black high school principal of the formerly all-black Booker T. Washington High School, was dismissed for failure to sign a contract that he claims forced him to accept reassignment to a position not equal in status or responsibility to that of principal. Of the five principals in charge of the six separate school facilities existing prior to elimination of the dual school system (one principal served two facilities), three were retained as principals in the unitized system and two were replaced with principals (one white and one black) selected from outside the pre-desegregation principal population. One of the new principals was assigned grades one and two and the other new principal was designated grades five and six.[1]

1.

### 1969–70 School Year

| School | Grade | Students | | Teachers | | Principal |
|---|---|---|---|---|---|---|
| | | W | B | W | B | |
| Pruitt Elementary | (1–6) | 0 | 263 | 1 | 13 | Kennedy (W) |
| Miller Grade | (1–4) | 451 | 41 | 16 | 0 | Kennedy (W) |
| Atlanta Grade | (5–8) | 448 | 52 | 17 | 1 | Stingley (W) |
| Booker T. Washington | (7–12) | 0 | 218 | 1 | 10 | Bassett (B) |
| Atlanta High | | | | | | |
| (old bldg.) | (9–12) | 434 | 36 | 15 | 0 | Johnson (W) |
| Douglass | (1–12) | 0 | 260 | 1 | 13 | Northcutt (B) |
| | | 1333 | 870 | 51 | 37 | |

### 1970–71 School Year

| School | Grade | Students | | Teachers | | Principal |
|---|---|---|---|---|---|---|
| | | W | B | W | B | |
| Atlanta Primary (Miller Gr.)* | (1–2) | 217 | 157 | 13 | 5 | McClure (W)**— teacher at Atlanta Grade 1969–70 |
| Atlanta Elem. (Pruitt-Washington)* | (3–4) | 218 | 191 | 9 | 7 | Kennedy (W)—principal at Pruitt and Miller 1969–70 |
| Atlanta Grade (Atlanta Gr.) | (5–6) | 210 | 133 | 7 | 6 | Harper (B)**—teacher at Washington and Atlanta High 1969–70 |
| Atlanta Junior High (Atlanta High, old bldg.)* | (7–8) | 224 | 147 | 11 | | Stingley (W)—principal at Atlanta Grade 1969–70 |
| Atlanta High (new building) | (9–12) | 437 | 238 | 24 | 9 | Johnson (W)—principal at Atlanta High School 1969–70 |
| | | 1306 | 866 | 64 | 35 | [Assistant Principal—Northcutt (B)—principal at Douglass 1969–70] |

\* Indicates school building that was renamed in 1970–71.
\*\* Indicates a principal selected from *outside* the pre-desegregation principal population.

Claiming that his acceptance of the proffered contract for 1969–70 and 1970–71 would force him to accept either a demotion or dismissal in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, Bassett brought this suit for reinstatement and back pay.[2] Jurisdiction is based on 28 U.S.C. §§ 1343, 2201, and 2202.

Contracts for the 1969–70 and 1970–71 school years were voted on by the school board at its regularly scheduled meeting on February 10, 1969. An excerpt from the minutes of that meeting reflects the following:

A motion was made by Mr. Clements, seconded by Mr. Dupree to elect the following principals for the 1969–70 and the 1970–71 school years at the salary indicated below:

Caver Johnson State Salary plus $1,300.00 for 11 months

David Kennedy State Salary plus $400.00 for 11 months

James Stingley State Salary plus $600.00 for 10 months

Houston Bassett State Salary for 11 months

*Mr. Bassett's contract is contingent upon the operation of the Booker T. Washington School for these years.* Vote was unanimous.

[Emphasis added.]

The contract offered Bassett was not produced at the trial. Nevertheless, it is undisputed that Bassett's printed form contract was modified by the insertion of a handwritten provision, and that the effect of this provision was to stipulate that his principalship at Booker T. Washington would extend only until unitization of the schools, at which time he would be "reassigned." The plaintiff and other witnesses disagreed on whether the provision concerning reassignment specified further conditions.

Bassett, 52, was employed by the Atlanta Independent School District from 1958 through 1970. He served as principal of the all-black Pruitt Elementary School from 1958 through the fall semester of 1963, and as principal of the Booker T. Washington High School from the spring semester of 1963 through 1970. Bassett earned his bachelor's degree from Wiley College and his master's degree from the University of Illinois; he is certified as an "administrator" by the Texas Education Agency. No complaints regarding Bassett's proficiency were voiced by any of the defendants at any time, and the testimony was undisputed that his qualifications were comparable to all other principals employed by the Atlanta District.

Analysis begins with Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed. 2d 530 (1970). The applicable part of that decision pertaining to the desegregation of faculty and other staff requires that

. . . [I]f there is any such dismissal or demotion [of principals, teachers, teachers-aids, or other professional staff employed by the school district], no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individuals dismissed or demoted, *until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.*

[Emphasis added.]

*Id.* at 1218.

The impact of the *Singleton* requirement was explored fully in Lee v. Macon County Board of Education, 453 F.2d 1104 (5th Cir. 1971) (hereinafter *Lee I*) and its sequel, Lee v. Macon County Board of Education, 456 F.2d 1371 (5th Cir. 1972) (hereinafter *Lee II*). Although the Atlanta District was not a party defendant to *Singleton*, the district comes within the broad mandate of that

---

2. Defendants include two school superintendents. Truitt Ingram was superintendent of schools until November, 1969, when he was replaced by G. W. Haggard.

decision. *Lee I, supra,* 453 F.2d at 1112. Moreover, Atlanta's refusal to reinstate Bassett for the 1970–71 school year in the position of principal, or a position comparable to principal, on April 24, 1970 —the date Bassett was informed by Superintendent Haggard that he would not be reinstated—assured two vacancies out of the five available slots for principal in the 1970–71 school year. Since this decision not to reinstate Bassett precluded his employment in September to start the 1970–71 school year, the *Singleton* mandate, which was effective February 1, 1970, applies. *Id.*

■ Defendants' first contention, however, is that *Singleton* should not apply because Bassett's two-year contract was returned unsigned in March, 1969— prior to the effective date of *Singleton.* The record clearly establishes, however, that although he did not sign his contract, Bassett continued to teach throughout the first year of this two-year contract (the 1969–70 school year) without objection from the school board. The school board permitted Bassett to continue as principal without a written contract because they needed him at the all-black high school. Elementary contract law confirms what common sense should make apparent: the school board is estopped from asserting termination of the contract in March, 1969—when Bassett returned the contract unsigned—in light of subsequent conduct by the board that included retaining Bassett as principal and paying his monthly salary for the 1969–70 school year. Corbin on Contracts §§ 193–209. A demotion or dismissal occurs when the plaintiff's former school is closed and his principalship is terminated. *Lee I, supra,* 453 F.2d at 1108. Bassett's former school, the all-black Booker T. Washington High School, was closed and his principalship terminated at the conclusion of the 1969–70 school year.

■ Defendants' second contention is that the plaintiff is not entitled to *Singleton* protection because he was neither demoted nor dismissed by the school; ra-

ther, they argue, Bassett chose not to accept any position and therefore left voluntarily. This argument blithely ignores the obvious: if Bassett never received an offer other than the illusory promise of "reassignment" to an unannounced position, his rejection of this "non-offer" can not be said to be either legally significant or voluntary. The school board never offered Bassett any position with the Atlanta District—and clearly no position as principal or a position comparable to that of principal. Thus his request for a position as principal of either a junior high school or high school was merely his assertion that he was entitled to a position comparable to the one he held prior to desegregation and constituted both an invitation to negotiate and a rejection of the school board's vague promise of "reassignment" upon the closing of his former school.

Although Bassett and Ingram—superintendent until November of the 1969–70 school year—admitted discussion of a possible "reassignment" as vice-principal, neither participant in these discussions testified that a *contract* for vice-principal was offered. The argument that action by the school board in voting to offer contracts is only a "rubber stamp" on the actions of the superintendent simply will not pass muster under the circumstances of this case. The history of racial discrimination and the operation of a dual school system until 1970 related in a subsequent part of this opinion lends little support to an inference of good faith on the part of the school board that is necessary to conclude that the board would merely "rubber stamp" the superintendent's consideration of Bassett for vice-principal. Finally, the note from Superintendent Ingram to Bassett that was attached to the job description corroborates this interpertation:

Mr. Bassett:

This is a job description for Asst. Principal as I envision it. Of course this would have to be approved by the Board of Trustees. It has not been presented to them for consideration.

F. I.

■ On several occasions in his discussion with Superintendent Ingram, Bassett asserted his continued interest in a principalship and his belief that the vice-principalship under discussion was not comparable in status or responsibility to his former position as principal. Although a contract for the vice-principalship was never offered, defendants' argument that a principalship of a small school is equivalent in responsibility to a vice-principalship of a larger school merits response. *Singleton* guidelines on demotion are as follows:

"Demotion" . . . includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

*Singleton, supra,* 419 F.2d at 1218.

Bassett's fundamental objection to the proposed vice-principalship was that he considered it to be a reduction in responsibility.[3] Clearly the *Singleton* rule protects the faculty or administrator reassigned in the wake of desegregation from a reduction in responsibility—even a reduction in responsibility that is cushioned by an equal or greater salary:

Salary is not the only apogee in our hierarchy of values, and a truly dedicated educator, presumably the sort of educator that school boards would seek, will often minimize his monetary returns in exchange for factors that are more treasured by him as an administrator or teacher. The real gist of demotion is a reduction in responsibility, not in salary. * * * This principle of responsibility in the educational processes is at the heart of the entire desegregation process, . . .

An examination of the proposed duties of the vice-principal [4] reveals that Bassett

3. Bassett also contended that he would lose the pay raises of a principal and that the work load proposed for the vice-principal was intended to make the job unattractive.

4. JOB DESCRIPTION
ATLANTA INDEPENDENT
SCHOOL DISTRICT
ASSISTANT PRINCIPAL—ATLANTA
HIGH SCHOOL
PRIMARY FUNCTION:
To assist the Principal in the operation and administration of the school.
MAJOR RESPONSIBILITIES:
(1) Daily attendance records, six-weeks reports, yearly reports
(2) Student Activity Account
(3) Supplies and equipment
(4) Assist with student discipline
(5) Assist with extra curricular events
(6) Be responsible for textbook distribution and records
(7) Assume other responsibilities that might be assigned by the principal
ILLUSTRATION OF KEY DUTIES:
(1) *Collect attendance* data daily and post it to register, prepare six-weeks attendance reports, prepare the an-

nual principal's report (2) *Student Activity Account:* Keep an accurate record of all receipts and expenditures for different funds carried under this account and compile a monthly report on same: (3) *Equipment and Supplies:* Keep an accurate record on equipment and supplies assigned to the building, see that equipment is in operating order, see that instructional supplies for the teachers are secured and distributed, see that supplies for the operation and maintenance of the building are on hand at all times: (4) *Work with Principal* in maintaining student discipline and morale; (5) *Work with the Principal* in caring for athletic events and other student functions; (6) *Distribute textbooks* to the teachers and maintain an accurate record of this distribution; (7) *From time to time* special projects or assignments will be made by the Principal as the need arises.
QUALIFICATIONS:
(1) *Education:* (a) Bachelor's Degree or above; (b) Competent in

was under consideration for a position as a combination bookkeeper, supply clerk, and errand boy for the principal. Except for the ministerial duties of preparing attendance reports and distributing supplies and textbooks, he would function only to "work with" the principal and would be directly responsible to the principal on matters assigned to him. Bassett would thus forego any leadership role in shaping the goals and policies of his school. A school principal, on the other hand, works directly with teachers and students in furthering the *substance*, rather than merely the *form* (records, books, supplies), of the educational process.

In *Lee II, supra,* the Fifth Circuit repudiated a similar sham. The trial court concluded that the reassignment of a head coach of a small school to assistant coach at a large school did not constitute a demotion within the meaning of *Singleton*. Reversing the lower court, the Fifth Circuit held that the school board failed to show that the coach's responsibility was not diminished by his reassignment or that he lacked qualification for the job:

> The position of head coach in the eyes of his players, the school, and the community, places a heavy burden upon a coach. Upon his shoulders falls the ultimate responsibility for the success or failure of the team. There is no way to shift this burden to his assistants. Furthermore, the personal responsibility which he bears for the physical and moral development of those under his tutelage requires that he, not his assistants, answer directly to school and public officials in the event that development is questioned in method or result. Responsibility is the life of privilege. It is clear to us that Mitchell's reassignment as an assistant coach, regardless of the size of the athletic program of the larger

high school, was a reduction in responsibility, "the real gist of demotion."
*Lee II, supra,* 456 F.2d at 1374.

■ Although conflicting, some testimony was introduced by the defendants to show that Bassett was considered for a position as Director of Federal Programs subsequent to the filing of this law suit. The credibility of this assertion is slight. First, no evidence was introduced to show that a contract for this position, approved by the school board, was offered to Bassett. Secondly, defendants' admission on cross examination that substantial portions of the federal funds were suspended pending outcome of an HEW hearing on whether the Atlanta District was in compliance with the Civil Rights Act of 1964 cast doubt on the good faith motives of the school board. Finally, even if such a contract were offered—and the court finds that it was not—offering a position "outside the normal processes and responsibilities of the system" may constitute a demotion within the meaning of *Singleton. Lee I, supra,* 453 F.2d at 1109. Evidence introduced by the defendants failed to establish that the responsibility of this Director of Federal Programs, an adjunct to the office of Superintendent, would even approach the responsibility of a school principal operating within "the normal functioning of the . . . school system." *Id.*

Defendants' third contention is that Bassett was not offered a position as principal because at least three other principals had greater objective qualifications than did the plaintiff. This argument misunderstands the command of *Singleton*:

> It is not enough to assert that a principal hired from without the pre-order population is "more" qualified than a member of the population of demoted principals or teachers, for acceptance of that assertion would

record keeping; (c) Possess an administrator's certificate for a principal or has completed a minimum of six (6) college courses toward an approved certification program.

ORGANIZATIONAL RELATIONSHIPS:
(1) Accountable to the high school principal for performance of assigned responsibilities.

make illusory the constitutional presumption that this court erected in *Singleton*. The per se presumption of *Singleton* with regard to qualifications was erected to assure compliance with the Fourteenth Amendment in all phases of the desegregation process. In order to establish that a former principal was not "qualified," and therefore not within the protective penumbra of *Singleton,* a school board would have to establish the principal's lack of "qualification" by means of objective and absolute criteria, not by means of comparison with another applicant or by means of administrative institution. *The board must show the former principal to be independently unqualified to assume the new opening. And in order to fulfill that burden the board would have to establish quite clearly why one who was qualified prior to a desegregation order suddenly became unqualified after the order.*

*Lee I, supra* at 1110. [Emphasis added.]

■ This court does not have to pass on the fairness of defendants' objective checklist of qualifications—proposed *after* the 1970–71 school year—in order to measure Atlanta's conduct by *Singleton's* standard. The uncontroverted testimony of defendants is that Bassett was qualified to hold the position of principal of either an elementary or secondary school (he was elementary principal for 4½ years, and secondary principal for 7½ years) and that no complaints on his proficiency were known to them. Of the five principals in charge of the six separate school facilities existing prior to elimination of the dual school system, three were retained as principals in the unitized system and two were replaced with principals (one white and one black) selected from *outside* the pre-desegregation principal population. Since one of the two new principals is black—and thus exempt from the requirement of *Singleton*—Bassett clearly is entitled to the principalship of the Atlanta Primary School that was filled by an applicant outside the predesegre- gation principal population at the beginning of the 1970–71 school year or to a principalship of one of the other four schools in the Atlanta District.

■ Bassett contends that he is entitled to a position as principal of either grades 9 through 12 or grades 7 and 8 because he was formerly principal of grades 7 through 12. Although reassignment of a teacher to one grade level from another grade level "for which he has had substantial experience within a reasonably current period" may constitute a demotion, *see Singleton, supra,* 419 F.2d at 1218, the particular circumstances of this possible reassignment fall outside the guideline. Bassett has 7½ years experience as a secondary principal and 4½ years experience as an elementary principal. Since any shift in responsibility that is required for a principal moving from one series of grade levels to another is not as significant as the shift in the degree of skill that may be required for a teacher moving from one grade level or subject area to another, Bassett's 4½ years experience as principal at the elementary level constitutes the "substantial experience within a reasonably current period" necessary to qualify him for assignment as principal of an elementary school. Thus if Atlanta determines in reinstating Bassett that he should be principal of grades one and two, or principal of any other of the four schools other than those consisting of grades 9 through 12 or grades 7 and 8, such shift will not constitute a demotion. This conclusion is compelled by the practical consideration of several complicating factors.

First, since three high schools and one junior high school were replaced under the desegregation order with *one* high school (grades 9 through 12) and *one* junior high school (grades 7 and 8), four principals from the pre-desegregation population (less one who dropped out of contention by accepting another position) are left in contention for only two slots at the junior high or high

school level.[5] Secondly, the two principals remaining in contention with Bassett both have prior experience as principal at the secondary level and both possess comparable objective qualifications.[6] Thus while Bassett undeniably is entitled to be reinstated as principal of one of the five schools in the Atlanta District, this court can not conclude that once he is reinstated as principal, the Board's selection of Bassett as principal for grades 1 and 2, or as principal for any of the other four schools and corresponding grade levels other than grades 7 and 8 or grades 9 through 12, is proscribed by *Singleton*.[7]

Defendant's fourth contention, that the plaintiff has the burden of proving that he was dismissed or demoted on grounds of race, is without merit. As discussed earlier, Bassett's claim that the school board refused to reinstate him as principal, or in a position comparable to principal, for the 1970–71 school year falls within the *Singleton* mandate:

> *Singleton* held that any hiring of principals or teachers of another race from outside the pre-desegregation order populations of principals and teachers was a *per se violation* of the constitutional rights of those principals or teachers who were within the pre-desegregation order populations. The only way that a school board could pass over a member of the pre-order population would be to take that member out of the protective penumbra of *Singleton* altogether by establishing that the principal or teacher was not "demoted" or "dismissed," or that the principal or teacher was not "qualified," factors which we have already discussed in greater detail.

*Lee I, supra,* 453 F.2d at 1113. [Emphasis added.]

Even if Bassett's claim did not come within *Singleton*, the pre-*Singleton* law

---

5. See note 1, *supra*.

6.

| | Bassett | Johnson | Stingley |
|---|---|---|---|
| Age | 50 | 50 | 40 |
| Degree | Master | Master | Master |
| Number of years as principal | 12 | 22 | 10 (or 11) |
| Number of years with Atlanta | 12 | 23 | 10 |
| Total number of years experience | 30 | 27 | 17 |

7. The only testimony on the skills required for any position available in the Atlanta District that was offered by the defendants focused on a comparison of the position of vice-principal with that of principal. Defendants offered the testimony of two expert witnesses: Dr. Charles Matthews and Mr. Thomas Carney. Dr. Matthews is superintendent of schools in Longview, Texas. See *Singleton*, supra, 419 F.2d at 1219 (No. 28045). Both witnesses testiifed that the vice-principalship under consideration was equal to or better than the former principalship that Bassett retained with the Booker T. Washington High School. Neither of the experts compared the specific duties and responsibilities of the vice-principalship under consideration with the specific duties and responsibilities of the principalship of either an elementary or a secondary school in the Atlanta Independent School District. Instead, the testimony was limited to mere conclusions on the superiority of a vice-principalship of a large school over the principalship of a smaller school. Although these conclusions may be relevant, they can be accorded very little weight in the absence of any underlying testimony on the comparison of specific duties and responsibilities of the two positions.

of the Fifth Circuit would apply: When the educational processes are historically segregated, the burden rests on the school board to prove that its hiring practices were nondiscriminatory. United States v. Jefferson County Board of Education, 372 F.2d 836, 895 (5th Cir. 1966), aff'd en banc, 380 F.2d 385 (1967), cert. denied, sub nom. Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967); Lee I, supra, 453 F.2d at 1113.

The record reveals a history of segregation of the educational processes. Prior to February 1968, the Atlanta Independent School District maintained two high schools: the all-black Booker T. Washington High School and the predominantly all-white Atlanta High School. The Pruitt Elementary School was all-black; the Miller Grade School and the Atlanta Grade School were predominantly white. In February 1968, the Atlanta District was consolidated with the Douglassville Independent School District under the name of Atlanta Independent School District. At the time of consolidation, the Douglassville District maintained two schools: the predominantly all-black Douglass School, grades 1 through 12, and the predominantly all-white Douglassville Elementary School, grades 1 through 8. Although the predominantly all-white Douglassville student body was integrated with the other schools of the Atlanta District, students attending the predominantly all-black Douglass School remained with that school until unitization in the 1970–71 school year. Under a plan approved by the Department of Health, Education, and Welfare for the 1970–71 school year, integration was achieved through the building of one new high school facility (grades 9 through 12) and the use of other existing facilities for grades other than the high school grades.

In addition to the undisputed history of the operation of the dual school system within the Atlanta Independent School District prior to the 1970–71 school year, plaintiff's attorney offered the testimony of Bassett on numerous specific incidents of racial discrimination directed against him or against his school. As a principal of a formerly all-black high school, Bassett described the frustration of being denied entrance to the Interscholastic League, having to schedule football games without the cooperation of the school administration afforded the all-white schools, and attempting to raise money for band uniforms without the same access to the district band fund available to the all-white schools. Bassett described an entire section of the school building that was destroyed by fire but that was left unrepaired and even unfumigated for an inordinately unreasonable period of time. Finally, Bassett related the ignominy of using restroom facilities that, before they were burned and never replaced, lacked heaters, soap, and toilet paper; on at least one occasion he received the children's school lunches in garbage trucks.

■ Defendants' remaining arguments are without merit. First, defendants contend that plaintiff's request for a hearing before the school board submitted on July 6, 1970—approximately two months after he was told he would not be reinstated—was not timely or not in compliance with hearing procedures adopted by the Atlanta Independent School Board. (The defendant board members who testified were at a loss to summarize these procedures.) This contention is of no consequence in light of the per se Singleton requirement. Secondly, the defendants' argument that plaintiff did not exercise reasonable diligence in attempting to find another position as principal, or a comparable position, is unsupported by the record. Bassett testified that he had made two trips to Houston, one to Texas Southern University, one to Fort Worth, and one to Texarkana but received no offers of a position comparable to principal. Defendants have not only failed to carry their burden of showing that plaintiff

did not use reasonable care and diligence in attempting to find employment, they have also failed to show that jobs were available that the plaintiff could have discovered and for which he was qualified. Sparks et al. v. Griffin, 460 F.2d 433 (5th Cir. 1972); Hegler v. Board of Education of Bearden School District, 447 F.2d 1078, 1081 (8 Cir. 1971).

 Since defendants have violated the *per se* constitutional command of *Singleton,* the form of relief is clear:

It is clear to this court that under the *Singleton* approach to the Fourteenth Amendment, if a principal is demoted or dismissed pursuant to a desegregation order and if his objective qualifications for his principalship do not diminish in an absolute sense after the issuance of the order and his demotion or dismissal, then he *must* be given opportunity to assume any new principalships or any positions tantamount to his lost principalship prior to the offering of the position to new applicants of another race.

*Lee I, supra,* 453 F.2d at 1111.

Moreover, the board's previous hiring of another person to fill the principalship cannot prevent appropriate relief by a court of equity in vindication of the law and the Constitution. *Lee I, supra* at 1112. This is too late in the day to contend that those who have borne the crushing indignity of racial discrimination all their lives must shoulder that burden a little longer because the school board must live with a pecuniary setback engendered by the mistreatment of two qualified educators: the reinstated plaintiff who lost his principalship because of racial discrimination and the displaced administrator who was principal but for two years. Accordingly, it is

Ordered that Houston Bassett be reinstated immediately as full-time principal of the Atlanta Primary School or as full-time principal of one of the other four schools in the Atlanta Independent School District for the 1972–73 school year. It is further

Ordered that Houston Bassett be reimbursed by the defendants in the amount of $26,082 in back pay for the 1970–71 and 1971–72 school years [8] and that any retirement, insurance, and annuity benefits and any other benefits earned in the 1970–71 and 1971–72 school years to which Bassett would be entitled were his employment not terminated by the defendants be reinstated. It is further

Ordered that defendants, to the extent that they have not already done so, develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted, if such dismissal or demotion is necessary. These criteria shall be made available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee. *See generally* Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1970), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L. E.2d 530 (1970); United States v. Texas, 321 F.Supp. 1043 (E.D.Tex.1970); 330 F.Supp. 235 (1971); aff'd as modified, 447 F.2d 441 (5th Cir. 1971); stay denied, Edgar v. United States, 404 U.S. 1206, 92 S.Ct. 8, 30 L.Ed.2d 10 (Black, J.); cert. denied, 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972).

The Court finds that the instant proceedings were necessary to bring about compliance with Section 1983 of Title 42 of the United States Code and the Fourteenth Amendment to the Constitution; and that a reasonable fee for the services of plaintiff's attorney in this

8. Computation of the back pay to which Bassett is entitled is based on the affidavit of Superintendent G. W. Haggard prescribing the salary of a full-time principal on an eleven months schedule with a master's degree for the school years 1970–71 and 1971–72.

connection is the sum of $16,000. Therefore, it is

Ordered that plaintiff's attorney be awarded $16,000 in attorney's fees, and that such attorney's fees be included as part of the costs of court assessed against defendants.[9]

---

9. Lee v. Southern Home Sites Corporation, 444 F.2d 143 (5th Cir. 1971); NAACP v. Allen, 340 F.Supp. 703 (M.D.Ala.1972).

Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this title or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Pub.L. No. 92–318, tit. VII, § 718 (June 23, 1972) (1972 U.S.Code Congressional and Administrative News, p. 2069).