Leonard **LONDON** et al., Plaintiffs,

v.

The **EAST FELICIANA PARISH POLICE JURY** et al., Defendants.

Civ. A. No. 71–306.

United States District Court,
M. D. Louisiana.

Aug. 8, 1972.

Stanley A. Halpin, Jr., Debra A. Millenson, New Orleans, La., for plaintiffs.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Anthony J. Bonfanti, Melvin L. Bellar, Asst. Attys. Gen., Baton Rouge, La., for Governor of State of Louisiana.

Richard Kilbourne, Dist. Atty. and Atty. for East Feliciana Parish Police Jury, Clinton, La., John F. Ward, Jr., Burton, Roberts & Ward, Baton Rouge, La., Sp. Counsel for East Feliciana Parish School Board.

E. GORDON WEST, District Judge:

According to the 1970 census the East Feliciana Parish School Board as presently constituted was unconstitutionally malapportioned. However, the East Feliciana Parish School Board had voluntarily commenced the process of reapportioning itself at least by May 4, 1971, when it appointed a reapportionment committee, some four months prior to the filing of the instant suit. The Court is satisfied that had this suit never been filed, the East Feliciana Parish School Board would have adopted a constitutionally acceptable reapportionment plan prior to the next regularly scheduled election for School Board members which are the present elections.

After the instant suit was filed, counsel for defendant School Board advised counsel for plaintiffs that the Board was in the process of formulating a plan and no further action was taken with respect thereto until January, 1972, when plaintiffs filed a Motion for Partial Summary Judgment against the Police Jury. Although the School Board was not served with a copy of this motion, and although it was directed solely against the Police Jury, and although the School Board did not appear in Court on February 4, 1972, the date set for hearing of such motion, this Court issued an order directing both the Police Jury and the School Board to submit their reapportionment plans to the Attorney General in accordance with the Voting Rights Act of 1965 within ten days. Although the School Board then requested additional time to file its plan with the Attorney General, this Court did not grant such additional time and the Board complied with the directive of this Court, even though it had not been a party to the motion, and adopted a resolution on February 14, 1972, adopting a new reapportionment plan which it then submitted to the Attorney General.

By letter of April 22, 1972, the Attorney General interposed certain objections to the plan proposed by the Board. On April 28, 1972, the School Board resubmitted the same plan with additional explanatory statistics and information. In the meantime, after being advised by the Justice Department that it could vary its district lines from the Federal Census Enumeration District boundaries, the Board on May 12, 1972, adopted a resolution amending its plan so as to eliminate the objections raised by the Attorney General and submitted such amended plan to the Attorney General by letter of June 7, 1972. On June 12, 1972, counsel for plaintiffs dispatched a letter to the Justice Department requesting an opportunity to be heard by way of filing with the Department a comment urging rejection. The Attorney General of the United States by letter of June 15, 1972, approved the amended plan of the School Board as being nondiscriminatory.

Plaintiffs object that the Attorney General did not give them time to file objections to the Board's proposed plan. However, as plaintiffs were very alert in asking the Attorney General for time to submit objections to the amended plan, the Court can only presume that they were equally alert in filing objections to the original plan when submitted to the Attorney General on February 23, 1972, and must also assume that they raised the same objection then that they would have raised to the amended plan. Consequently, this Court can only assume that the Attorney General was aware of the objections raised here by plaintiffs and found them to be without merit.

In the meantime, on June 12, 1972, just prior to receipt of the Attorney General's approval, plaintiffs filed a motion for summary judgment alleging basically that defendants were dilatory in resubmitting essentially the same plan and noticed that motion for hearing on July 7, 1972.

After receipt of the Attorney General's letter of approval, on June 30, 1972, defendants also filed a Motion for Summary Judgment requesting approval of their amended plan as approved by the Attorney General and noticed that motion also for July 7, 1972.

After hearing arguments of counsel in support of both motions, the Court denied both motions for summary judgment on the grounds that there were still material facts in dispute and that the case was not in proper posture for disposition by summary judgment. Plaintiffs then requested an opportunity for an evidentiary hearing. This Court, due to the imminence of the upcoming elections, the first primary being set for August 19, 1972, instead gave both plaintiffs and defendants ten days within which to submit evidence by deposition and/or affidavits, file briefs and suggested findings of fact and conclusions of law.

Thereafter, plaintiffs set up depositions of the named plaintiff, Mr. Lon-don, one Malcolm Byrnes, and a professor of Political Science at Louisiana State University at New Orleans, Mr. Richard Engstrom, for 1:00 o'clock P.M. Thursday, July 13, 1972, at his office and informed counsel for defendant of same on Monday evening, July 10, 1972. Counsel for defendant had previous court commitments for that day and was unable to attend the taking of the depositions, so informed counsel for plaintiffs, and objected to the taking of depositions without his being present. However, due to the short time limit imposed by this Court, counsel for plaintiffs proceeded with the depositions as scheduled.

Plaintiff also filed a request for certain admissions which defendant has answered and filed in the record as required. Both plaintiffs and defendants have filed exhaustive briefs and defendants have attached to their brief certain affidavits. It should be pointed out here that defendants were at somewhat more of a disadvantage, timewise, than plaintiffs, as they had no way of knowing what type of evidence plaintiffs might attempt to produce and no way to set up any rebuttal to that evidence, until after the time limit imposed by this Court had expired.

Consequently, defendants strenuously object to the admissibility of the depositions submitted by plaintiffs on the grounds that their attorney was not present at the taking of the depositions and had no opportunity to cross-examine the witnesses and no opportunity for normal discovery procedure. Taking defendants' objections into consideration, the Court feels that the imminence of the up-coming elections require this matter to be decided expeditiously and for that reason deems the depositions submitted by plaintiffs, as well as the affidavits submitted by defendants, as admissible and has taken same into consideration in reaching this decision, keeping in mind the objection that both plaintiffs' depositions and defendants' affidavits are somewhat self-serving

declarations as there was no opportunity for cross-examination by either side and no opportunity to present rebuttal evidence by defendants.

The plan of the School Board under attack here provides for a twelve member board to be elected from four single member districts, a three member district and a five member district. Plaintiffs have not specifically attacked the three member district presumably because that district is a black majority district. Rather, plaintiffs, as set forth in their brief and suggested findings of fact, have limited their attack to the five member election district. Also under attack is the provision of the Board's plan which provides that only nine members of the twelve member Board would stand for election now with three members, who were only recently elected from districts whose boundaries and constituencies will not change, serving out the balance of their term.

Considering the evidence and applicable law the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The School Board on May 4, 1971, voluntarily commenced the process of re-apportionment by appointing a reapportionment committee chaired by Board Member Robert A. Connell, Attorney at Law of Jackson, Louisiana, prior to any suit being filed. The School Board proceeded diligently, even after this suit was filed, to voluntarily and in good faith reapportion itself so as to meet constitutional requirements.

2. The ultimate amended plan of the School Board which is before this Court, was submitted to the Attorney General of the United States in accordance with the Voting Rights Act of 1965 and the previous order of this Court, and was approved by him as being nondiscriminatory on June 15, 1972.

3. The total population of East Feliciana Parish is 17,657 with 9,385 (53.-2%) black citizens and 8,272 (46.8%) white citizens. The total number of registered voters in East Feliciana Parish is 7,303 with 4,121 (approximately 55%) of those being white and 3,182 (approximately 45%) being black.

4. The Board's plan, as amended and approved by the Attorney General, provides for twelve members to be elected from four single member districts and two multi-member districts. One of the multi-member districts is majority black in population. The other multi-member district is majority white in population. Under the Board's proposed plan six of the twelve members will be elected from black majority districts and six of the twelve members will be elected from white majority districts. This will provide for a racially balanced School Board of 50% black and 50% white.

5. The depositions of Leonard London, the named plaintiff, and driving force in this suit, to a large extent amount to self-serving declarations as there was no opportunity for cross-examination by defendant nor adequate opportunity for rebuttal testimony. The testimony of Mr. London is further weakened by the fact that he is in the position of being a losing candidate who was defeated at the polls and by the fact that the relief sought by him would obviously segregate him into a district where he is virtually assured of election.

6. The deposition of Mr. Malcolm Byrnes is subject to the same objection that it is a self-serving declaration and largely hearsay. For example, Mr. Byrnes testifies at length as to the registration of black voters in the early and middle 50's and in the 1960's. Yet, he further testifies that he left East Feliciana Parish in 1947 and did not return until the summer of 1971. Furthermore, Mr. Brynes gives no source whatsoever for the statements he makes with regard to such registration during that period.

7. Mr. Byrnes also testifies in his deposition as to alleged segregation in

one of the schools in East Feliciana Parish. This testimony is not only inaccurate but pertains to a matter not at issue in this suit. It is a purely self-serving, inaccurate statement, and should not be considered in this particular controversy.

8. Plaintiffs rely almost totally on the depositions of Mr. London and Mr. Byrnes concerning alleged past discrimination to try to impute to the School Board an intent and purpose to defranchise or dilute the voting power of black citizens in East Feliciana Parish. As pointed out above, the admission of their depositions as evidence has been objected to by defendant although it was admitted by this Court. However, the Court is satisfied that Mr. London's testimony is to a great extent the self-serving testimony of a losing candidate and that Mr. Byrnes' testimony is to a great extent purely hearsay and in some areas factually incorrect.

9. Taking plaintiffs' testimony at its best, however, any discrimination which it describes is past history, the responsibility for which should not be legally or equitably attributed to the members of the present School Board. To the same effect are the requests for admissions filed by plaintiffs which refer to Reconstruction Days and the 1950's. In addition, most of the past discriminatory practices which the plaintiffs attempt to establish are practices of persons and/or officials other than this School Board and again should not properly or equitably be used to attribute impure motives to this School Board in fashioning its reapportionment plan.

10. The deposition of Professor Richard L. Engstrom, whom the plaintiff apparently seeks to qualify as an expert in Political Science, is less a factual deposition than it is a resume of the opinion of Mr. Engstrom as to how multi-member districts may be used as a device to dilute the voting power of blacks. Assuming, for the purposes of argument, that a multi-member district can be so used, there is nothing in the deposition of Dr. Engstrom, or Mr. London or Mr. Byrnes to indicate that the Board's use of multi-member districts in its proposed plan was a purposeful device to fence the black residents of East Feliciana Parish out of the School Board or was a purposeful device to further racial or economical discrimination. To the contrary, a proposed reapportionment plan which provides for the election of 6 blacks from black majority districts out of a total of 12 members to be elected would seem to have the opposite purpose and effect.

11. In their attack on the use of multi-member districts in the School Board's proposed plan, plaintiffs very carefully do not attack the multi-member district in which their class is in a clear majority but limit their attack only to the multi-member district where white citizens happen to be in a majority. It is obvious that the purpose of their attack is merely to guarantee the election of the maximum number of blacks. Yet, plaintiffs cite no case which, even by implication, could stand for the proposition that Negroes, as distinguished from other racial, ethnic or national origin groups are entitled to have election districts drawn so as to guarantee to their class the election of the maximum possible number of their class.

## CONCLUSIONS OF LAW

1. Although it is true that under the doctrine of Allen v. Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) and Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L. Ed.2d 476 (1971) even though the Attorney General has approved a submission, plaintiffs are still entitled to a determination by this Court as to whether the plan is unconstitutional in the respect alleged by plaintiffs. But there is nothing in those decisions which implies that this Court should not give great

weight to the finding and determination of the Attorney General of the United States.

2. This Court concludes, as a matter of law, that considerably more weight should be given to the findings and determination of the Attorney General of the United States that the School Board's use of multi-member districts in its proposed plan of reapportionment *does not* have the purpose or effect of discriminating against blacks than Professor Engstrom's opinion that multi-member districts can be used for such purpose.

█ 3. Plaintiffs attempt to collaterally attack the election laws of the State of Louisiana which require a candidate to ultimately receive a majority of the votes cast before he can have been deemed to have been elected, and which require voters to carry out their civic responsibility in voting for candidates for every seat to be filled. However, plaintiffs cite no case which holds that such laws are unconstitutional and this Court finds, as a matter of law, that such an attack may not be made collaterally in a proceeding of this type.

█ 4. Plaintiffs attack that feature of the Board's plan which provides for what plaintiffs erroneously refer to as a "place" system. The only feature of the Board's proposed reapportionment plan which resembles a "place" system is that in the multi-member district, seats or "places" have been designated different lengths of term of office in order to reestablish the staggered terms of office for School Board members so that approximately one-third of the Board stands for re-election every 2 years. This is required by Louisiana law and encouraged by educators throughout the state. Consequently, the so-called "place" feature of the Board's plan will be in effect only for this election. Thereafter, the various seats in the multi-member districts will come up for election singly, and at different times, so that the so-called "place" feature is thereafter eliminated. Even if the so-called "place" feature could, under other circumstances, be deemed to effect the constitutionality of the plan, the Court is satisfied that, as a matter of law, it cannot be so considered under these circumstances.

█ 5. There is nothing unconstitutional about the use of multi-member districts, especially where the use of such districts does not discriminate against or significantly dilute the voting power of minority groups, and no such discrimination or dilution has been shown here. Therefore, as a matter of law, the use of the multi-member districts included in the plan presented here does not result in a constitutional infirmity.

█ 6. Plaintiffs also attack that feature of the Board's plan which would permit three out of the twelve members of the Board who were recently elected from districts whose boundaries and constituencies will not be changed in the slightest degree under the new reapportionment plan to serve the remainder of their term. This Court is aware of the cases cited by plaintiff which require all members of an elected body to stand for re-election when that political body is reapportioned. However, the Court is satisfied that it would be grossly unfair and unequitable to require a person whose district was not malapportioned when he was elected, only two years ago, to stand for re-election now simply because the district of some other board member was malapportioned at the time he was elected. The law should not, and in the opinion of this Court does not require this.

█ 7. This Court is, therefore, satisfied that the East Feliciana Parish School Board voluntarily undertook, in good faith, to reapportion itself as required by the Constitution of the United States and applicable decisions of the Supreme Court. The School Board then

**138**

submitted its proposed plan to the Attorney General of the United States in accordance with the Voting Rights Act of 1965 and the previous order of this Court. The Attorney General has examined the proposed plan of the School Board, as amended, with regard to whether or not such plan is discriminatory and has now found that it is not discriminatory, including the sole feature of the plan here attacked by plaintiffs. His decision, in carrying out the duties and responsibilities delegated to him by the Congress of the United States, is entitled to great weight. The evidence submitted by plaintiffs to show past discrimination in East Feliciana Parish is, to a great extent, self-serving and hearsay and insufficient, as a matter of law, to sustain plaintiffs' attack herein. Furthermore, giving such evidence its greatest value, it would not be sufficient, as a matter of law, to justify attributing to this School Board and its reapportionment plan any impure motives of purposeful discrimination or dilution of the black vote. Neither would it sustain the burden of showing that the Board's reapportionment plan was conceived or will be operated to foster racial discrimination.

This Court is satisfied, as apparently was the Attorney General, that the School Board's proposed plan which will provide for the election of 50% of the Board from black majority districts and 50% from white majority districts is a fair and equitable reapportionment plan and plaintiffs' attack as to its constitutionality must, as a matter of law, fall.

Considering the law and the evidence which has been adduced in this matter, the Court is satisfied that the School Board's proposed reapportionment plan should be immediately implemented in all respects, and judgment will be entered accordingly dismissing this suit at plaintiffs' cost.