**Robert LYTLE, Plaintiff,**

v.

**COMMISSIONERS OF ELECTION OF UNION COUNTY et al., Defendants.**

**Civ. A. No. 74–237.**

United States District Court,
D. South Carolina,
Spartanburg Division.

Jan. 24, 1975.

David Ross Clarke, James B. Jacobsen, Mauldin, S. C., for plaintiff.

C. Tolbert Goolsby, Jr., Karen L. Henderson, Asst. Attys. Gen., Columbia, S. C., Bruce W. White, Union, S. C., for defendants.

## ORDER

BLATT, District Judge.

On March 4, 1974, the plaintiff filed an action in this court against the named defendants in their representative capacity only, alleging that the Board of Commissioners of Union County, the governing body of that county, was malapportioned in violation of the Fourteenth Amendment to the United States Constitution and the "one man—one vote" principle established by the Supreme Court of the United States in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and its progeny. The complaint attacked the use of "at-large" elections with a residency requirement that each candidate offering for one of eight seats on the Union County Board of Commissioners reside in a particular township which such candidate sought to represent. The plaintiff alleged that the plan as then structured denied equal protection to the more populous urban townships of Union County due to the population disparity between those townships and certain sparsely populated rural townships.

On April 8, 1974, the plaintiff and defendants filed appropriate motions for summary judgment with accompanying briefs in support of these motions. This court consolidated the instant action with McClain v. Lybrand, et al., C/A 74-281, a suit attacking the apportionment of the Edgefield County Council. The consolidation of the two actions followed a determination by this court that the first cause of action in *McCain* raised essentialy the same issue as did the action *sub judice*.

By Order dated May 16, 1974, this court granted plaintiffs' motions for summary judgment in both cases and directed that the Union County Board of Commissioners be elected "at-large" without the imposition of a residency requirement. In that Order, this court retained jurisdiction of the action for the purpose of awarding attorney's fees if it

subsequently determined that such an award was appropriate.

On May 17, 1974, the defendants in each case filed a motion to stay this court's directions as to methods by which the forthcoming elections in Union and Edgefield Counties should be held pending the outcome of an appeal by the defendants to the Fourth Circuit Court of Appeals. This court denied such motion by Order dated May 22, 1974. Thereafter, the Honorable Donald Russell, United States Circuit Judge for this Circuit, heard an appeal from such refusal, and, on May 30, 1974, Judge Russell directed that this court's Order of May 16, 1974, be stayed pending a hearing before a panel of the Fourth Circuit Court of Appeals to be held during the week of June 3, 1974.

In an opinion filed June 17, 1974, 509 F.2d 1049, the Fourth Circuit Court of Appeals reversed this court's judgment in *McCain,* but affirmed the judgment in *Lytle,* with the "suggestion" that the complete abolition of the residency requirement ordered by this court might be inappropriate, and this court was directed to consider the employment of "floating" representatives to solve the numerical population disparity between the representative townships of the Union County Board of Commissioners.

Following the aforesaid opinion by the Fourth Circuit Court of Appeals, this court, on June 19, 1974, ordered that a redistricting plan for Union County, which employed "floater" or "at-large" members, be instituted for the election of members to the Board of Commissioners, and no appeal was taken from this last Order. Thereafter, on August 19, 1974, the plaintiff moved for an award of attorney's fees in view of the fact that he was the prevailing party in the litigation. This court, after conducting a hearing on the aforesaid motion, ordered both parties to submit briefs directed to the propriety of an award of attorney's fees in a reapportionment case brought pursuant to 42 U.S.C. § 1983. Both parties have now submitted briefs and plaintiff's motion for attorney's fees is ripe for disposition.

■ The instant action was brought under 42 U.S.C. § 1983, which statute is devoid of any express authorization for an award of attorney's fees to a prevailing party. This court recognizes that the early American rule generally did not allow an award of attorney's fees in the absence of express statutory authorization. *See,* e. g., Simmons v. Friday, 190 F.2d 849, 851 (8 Cir. 1951). However, equally apparent is the fact that this restrictive rule has been, in recent years, substantially eroded. Even prior to the recent judicial trend to award attorney's fees under certain circumstances without statutory authorization, it was well settled that federal courts, even in the absence of express statutory authorization, had equitable powers in certain instances to make such awards. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Historically, this power was exercised solely to punish parties who litigated in bad faith by employing dilatory tactics and obstinate defenses. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Bell v. School Board of Powhatan County, 321 F.2d 494 (4 Cir. 1963); Rolax v. Atlantic Coastline Railroad Co., 186 F.2d 473 (4 Cir. 1951). In the instant action, the record before the court makes clear that an award of attorney's fees based upon this "obstinate obduracy" theory would not be proper. There is absolutely no evidence here to support a finding by this court that the defendants litigated in bad faith, or that the defense was offered without any possible basis in law or fact. Indeed, under a prior ruling of the Supreme Court of South Carolina in Knight v. Salisbury, S.C., 206 S.E.2d 875 (1974), no body politic of which any of the defendants were members had legal authority to reapportion the Union County Board of Commissioners. Be-

cause of this unique circumstance, an award of attorney's fees based upon obstinancy, or bad faith, is manifestly not warranted.

Aside from instances in which there is express statutory authorization for an award of attorney's fees, or where the parties have employed dilatory and obstinate tactics, the restrictive rule heretofore mentioned has been eroded to the extent that the great majority of courts now recognize two legal principles which are deemed appropriate exceptions to the rule which denied awards of attorney's fees under the circumstances here involved. The first exception is the "common fund" or "common benefit" theory most recently recognized by the United States Supreme Court in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In *Mills,* the Supreme Court held that fees may be awarded in a case in which "a substantial benefit" is conferred on the members of "an ascertainable class." 396 U.S. at 393, 90 S.Ct. 616. The *Mills* decision is based upon the rationale that an award of attorney's fees is proper to remedy the injustice of requiring one plaintiff to bear the entire expense of an action which resulted in benefit to a large class. In Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the Supreme Court made clear that the "common fund" theory was not premised upon any obstinancy or bad faith on the part of the defendants:

"... ' "Fee-shifting" is justified in these cases, not because of any "bad faith" of the defendant but, rather, because "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." ' " 412 U. S. at 4–5, 93 S.Ct. at 1947.

The *Mills* opinion was not novel, but was, in fact, an extension of the "common fund" theory established in

*Sprague,* supra. In the words of one court:

" . . . *Mills* represents a marked extension of the 'common fund' exception to the traditional American rule, but not a radical departure. Utilizing the equitable doctrine of unjust enrichment, it merely extends the applicability of the exception to instances where a substantial 'benefit', whether pecuniary or not, is bestowed upon an ascertainable class or group . . ." Gilpin v. Kansas State High School Activities Association, 377 F.Supp. 1233, 1246 (D.C.Kan.1974).

Judge Peckham well expressed this principle in La Raza Unita v. Volpe, D.C., 57 F.R.D. 94, 97 (1972) . . . "*Mills* extended the scope of the 'common-fund' justification for the awarding of fees by holding that *no pecuniary benefit need be demonstrated* . . ." (emphasis added).

The second important element in *Mills* is recognition that an award of attorney's fees may be properly linked to efforts to vindicate congressional policy:

" . . . (T)he stress placed by Congress on the importance of fair and informal corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders . . ." 396 U.S. at 396, 90 S.Ct. at 627.

Consequently, *Mills* represents both a defensive and offensive use of the court's equitable powers—defensive, to prevent unjust enrichment of "free-riders" and offensive, to promote the effective implementation of strong congressional objectives. Thus, this court feels that the "common fund" principle of *Mills* may properly be used as a basis for the award of attorney's fees in the instant action. Bebchick v. Public Utilities Commission, 115 U.S.App.D.C. 216, 318 F.2d 187 (1963); Brewer v. School Board of City of Norfolk, 456 F.2d 943

(4 Cir. 1962); Rolax v. Atlantic Coastline Railroad Co., 186 F.2d 473 (4 Cir. 1951); Bright v. Philadelphia-Baltimore-Washington Stock Exchange, 327 F.Supp. 495 (E.D.Pa.1971); Gray v. Creamer, 376 F.Supp. 675 (D.Penn. 1974).

■ The other recently developed exception to the general rule against an award of attorney's fees, and the exception this court feels is more applicable here, is the "private Attorney-General" theory. This theory is an outgrowth of the Supreme Court's holding in Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). In intrepreting the scope of the reasonable attorney's fee provision under Title II of the Civil Rights Act of 1964, § 204(g), 42 U.S.C. § 2000a-3(b), the Supreme Court in *Newman* found the basis of award of fees to be the encouragement of litigation to accomplish congressional objectives of eradicating racial discrimination. While *Newman* involved a suit brought under a civil rights statute which made specific allowance for attorney's fees, the following language from *Gilpin,* supra, at page 1248 of 377 F.Supp, is equally pertinent in the instant case: " . . . Relying upon the 'private attorney general' [theory] concept recognized in *Newman,* a logical extension of the 'benefit' rationale adopted in *Mills,* and the courts' traditionally broad equity powers noted in *Sprague,* the federal judiciary has of late been increasingly willing to award attorneys' fees, despite strict inapplicability of the traditional exceptions and in the absence of specific statutory authority . . . " In this court's view, the rule, as evolved, stated briefly, is that unless a statutory scheme can be interpreted as precluding it, a "private Attorney-General" should be awarded attorney's fees when he has effectuated a strong congressional policy which has benefited a large class of people, and where, further, the necessity and financial burden of private enforcement is such as to make an award essential.

■ This theory has been applied to allow an award of attorney's fees in numerous cases where, as here, jurisdiction is founded upon an alleged violation of the Civil Rights Acts of 1866, 1870, and 1871; 42 U.S.C. § 1981, § 1982, and § 1983, respectively. Cooper v. Allen, 467 F.2d 836 (5 Cir. 1972); Donahue v. Staunton, 471 F.2d 475 (7 Cir. 1972); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5 Cir. 1971); Brubaker v. Board of Education, 502 F.2d 973 (7 Cir. 1974); Knight v. Auciello, 453 F.2d 852 (1 Cir. 1972); Jordan v. Fusari, 496 F.2d 646 (2 Cir. 1974); Brandenburger v. Thompson, 494 F.2d 885 (9 Cir. 1974); Gates v. Collier, 489 F.2d 298 (5 Cir. 1973); Class v. Norton, 505 F.2d 123 (2 Cir. 1974); Bassett v. Atlanta Independent School District, 347 F.Supp. 1191 (E.D.Tex.1972); Wallace v. House, 377 F.Supp. 1192 (D.C.La. 1974); Dyer v. Love, 307 F.Supp. 974 (N.D.Miss.1969); Martinolich v. Dean, 256 F.Supp. 612 (S.D.Miss.1966); London v. East Feliciana Parish Police Jury, 347 F.Supp. 132 (E.D.La.1972); rev'd on other grounds, 476 F.2d 637 (5 Cir. 1973); Scott v. Opelika City Schools, 63 F.R.D. 144 (M.D.Ala.1974); NAACP v. Allen, 340 F.Supp. 703 (M.D. Ala.1972); Jinks v. Mays, 350 F.Supp. 1037 (N.D.Ga.1972); Wyatt v. Stickney, 344 F.Supp. 373 (N.D.Ala.1972); Lyle v. Teresi, 327 F.Supp. 683 (D.Minn. 1971).[1] While many of these cases involve allegations of racial discrimination, an award of attorney's fees based upon the "private Attorney-General" theory is not limited to cases involving such discrimination. As the court noted in Commonwealth of Pennsylvania v.

---

1. An excellent and exhaustive survey of cases which have allowed attorney's fees in litigation alleging violation of civil rights is contained in Attorney's Fees in Pro Bono Publico Cases, by Mary Frances Derfner for the Lawyer's Committee for Civil Rights, Washington, D.C.

Charleroi Area School District, D.C., 63 F.R.D. 440, 442:

" . . . The broad formulation of both the *Newman* and *Mills* decisions in terms of the furtherance of the public interest, whatever the particular focus of the statute involved, taken together with the broad language of § 1983 itself, seem on their face to negate the proposition that fees may be awarded only when racial discrimination is challenged . . . "

*See,* e. g., Natural Resources Defense Council, Inc. v. Environmental Protection, 484 F.2d 1331 (1 Cir. 1973) (fees awarded to plaintiff seeking E.P.A. compliance with the Clean Air Amendments of 1970, 42 U.S.C. § 1857c-5, et seq.); Sierra Club v. Lynn, 364 F.Supp. 834 (W.D.Tex.1973) (fees awarded to plaintiff forcing compliance with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq.); *La Raza Unida,* supra (fees awarded to plaintiff enjoining building of highway for failure to comply with Department of Transportation Act of 1966, § 4(f), 49 U.S.C.A. § 1653(f)).

■ Generally, three factors must be taken into consideration in determining the propriety of the employment of the "private Attorney-General" theory as a vehicle to award attorney's fees in any given case. These factors include (a) effectuation of a strong congressional policy, (b) the necessity and financial burden of private enforcement, and (c) the number of individuals benefited by the plaintiff's efforts. *La Raza Unida,* supra, at page 99 of 57 F.R.D.

■ There can be little doubt as to the presence of an effort to effectuate a strong congressional policy in the instant action. The right to exercise an unabridged electoral franchise is supported by the strongest congressional and constitutional policy. Indeed, the right to vote is the single pillar upon which our entire system of government is founded. Neither can there be doubt,

under the circumstances here involved, as to the necessity of private enforcement, and the concomitant expense associated therewith, when this action was brought pursuant to 42 U.S.C. § 1983. In enacting § 1983, Congress sought to make certain that the protection of individual rights was not left in the hands of local authorities who were, at times, the very source of the constitutional deprivation. As the Fifth Circuit Court of Appeals noted in Lee v. Southern Home Sites Corp., 429 F.2d 290 at 295:

" . . . In the area of civil rights, many cases have either allowed or implicitly recognized the discretionary power of a district judge to award attorney's fees in a proper case in the absence of express statutory provision . . . *and especially so when one considers that much of the elimination of unlawful racial discrimination devolves upon private litigants and their attorneys."* (emphasis added) (citations omitted).

In view of the rising costs of litigation, and recognizing that many actions filed pursuant to 42 U.S.C. § 1983 do not have the potential for an award of substantial pecuniary damages, if federal courts refuse to exercise their equitable discretion to order an award of attorney's fees when such discretionary action is appropriate, then private litigation might well be stifled and denial of constitutional rights might continue unfettered. "42 U.S.C. § 1983 and its jurisdictional concomitant, 28 U.S.C. § 1343(3) represents congressional indication that federal courts should use their equitable powers to insure vindication of the rights protected by the Constitution and laws from infringement by those acting under color of state law . . . " Stanford Daily v. Zurcher, 366 F.Supp. 18, 24 (D.C.Cal. 1973).

Finally, it is equally clear to this court that a great majority of the citizens of Union County were benefited by the plaintiff's efforts to insure that their vote was not diluted by an uncon-

stitutional system of electing members of the Board of Commissioners of said County. In so acting, the plaintiff was vindicating congressional and constitutional policy and the general public was the ultimate beneficiary of his efforts. Members of the public who reside in the urban areas of Union County can now be assured that they are represented on the governing body of their county on a constitutionally acceptable basis with their rural brethren. As a result of the plaintiff's efforts, the electorate of Union County can likewise be assured that their Board of Commissioners more accurately reflects the desires of all the citizens of that County. The plaintiff here, in this court's opinion, was, in the truest sense of the word, acting as a "private Attorney-General."

This court recognizes its holding in the action *sub judice* that attorney's fees may properly be awarded under certain circumstances within the exercise of the court's discretionary powers on the "private Attorney-General" theory when a reapportionment action is brought pursuant to 42 U.S.C. § 1983, may be contrary to the exact wording found in Bradley v. School Board of City of Richmond, Va., 472 F.2d 318 (4 Cir. 1972). In that case, the Honorable Donald Russell, United States Circuit Judge, writing for the Fourth Circuit Court of Appeals, rejecting the argument that attorney's fees may be awarded in the absence of statutory authorization, and in circumstances outside the traditional ambit of the *Ticonic* doctrine, stated:

".   .   . If, however, the rationale of *Mills* is to be stretched so as to provide a vehicle for establishing judicial power justifying the employment of award of attorney's fees to promote and encourage private litigation in support of public policy as expressed by Congress or embodied in the Constitution, it will launch courts upon the difficult and complex task of determining what is public policy, an issue normally reserved for legislative

determination, and, even more difficult, which public policy warrants the encouragement of award of fees to attorneys for private litigants who voluntarily take upon themselves the character of private attorneys-general.

.   .   .

".   .   . Apportionment suits would justify awards under this theory.

.   .   .

".   .   . Accordingly, when Congress omits to provide specially for the allowance of attorney's fees in a statutory scheme designed to further a public purpose, it may be fairly accepted that it did so purposefully, intending that the allowance of attorney's fees in cases brought to enforce the rights there created or recognized should be allowed *only as they may be* authorized under the traditional and long-established principles as stated in Sprague v. Ticonic Bank (1939) 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184. Such consideration, it would seem, was the compelling reason that prompted one commentator to offer the apt *caveat* that the determination of public policy as a predicate for such awards should be more safely left with Congress and not undertaken by the Courts.   .   .   .

".   .   . We find ourselves in agreement with the conclusion that if such awards are to be made to promote the public policy expressed in legislative action, they should be authorized by Congress and not by the courts.   .   .   ." *Bradley* at 329–331.

However, this court is convinced, based on the many cases heretofore cited, that, since *Bradley*, the law has evolved to a point that it is now appropriate to award attorney's fees under the facts of the instant case without violating any mandate of the Fourth Circuit Court of Appeals as expressed by the author of the *Bradley* opinion for whom this court has the very highest respect and admiration.

■ Finally, the defendants interpose the objection that an award of attorney's fees here is prohibited by the Eleventh Amendment. The Eleventh Amendment to the Constitution provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

While the constitutional language does not in its literal sense bar suits by citizens of a state against *that state*, such a prohibition has, however been implied by settled Supreme Court precedent. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Even if this court were to find that defendants here were state officials, an award of attorney's fees may be permissible under the principles set forth recently in Class v. Norton, 505 F.2d 123 (2 Cir. 1974). In *Class*, a panel of the Second Circuit Court of Appeals held that the Eleventh Amendment did not bar an award of attorney's fees against a state official because such award was "ancillary" and was the "necessary result of compliance with decrees which by their terms were prospective in nature." *Class*, at 505 F. 2d 123, 126, quoting Edelman v. Jordan,

415 U.S. 651 at 667–668, 94 S.Ct. 1347, 39 L.Ed.2d 662.[2]

■ However, this court, in awarding attorney's fees against the defendants here, is assessing Union County, and not the State of South Carolina, under the equitable authority which this court possesses. It is well settled that a county and, thus, county officials are not extended the protection of the Eleventh Amendment which is generally given to state and state officials. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Supreme Court in *Edelman*, supra, discussed the well recognized judicial test whereby the propriety of invoking Eleventh Amendment immunity is determined:

> " . . . It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. '(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.' . . . Thus, the rule has evolved

---

2. A number of courts have cited the case of Sims v. Amos, 336 F.Supp. 924, 340 F.Supp. 691 (M.D.Ala.) aff'd 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 as authority for the proposition that an award of attorney's fees against state officials is not violative of the Eleventh Amendment. Much controversy has arisen over the precedential value of the Supreme Court's summary affirmance in that case. *See*, e. g., Taylor v. Perini, 503 F.2d 899, 907 (6 Cir. 1974) (Edwards, J., dissenting). The concurring opinion of Chief Justice Burger in Fusari v. Steinburg, ―― U.S. ――, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 raises substantial doubt in this court's mind as to the precedential value of any summary affirmance:

> " . . . When we summarily affirm without opinion the judgment of a three-judge

District Court we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established . . ." (citations omitted).

Based upon the above-quoted language, this court believes that to base an award of attorney's fees upon *Sims* would be ill-advised and unwarranted.

that a suit by private parties seeking to impose liability which must be paid from the public funds is barred by the Eleventh Amendment." *Edelman*, 94 S.Ct. at 1355, 1356 (citations omitted).

Applying the test enunciated in *Edelman*, it seems clear to this court that an award of attorney's fees to the plaintiff against the defendants in their official capacity is not barred by the Eleventh Amendment. The award here, as aforesaid, will not be paid from state coffers, but is directed against the treasury of Union County, since the defendants are county officials who have been sued only in their representative capacity, Harper v. Kloster, 486 F.2d 1134, 1138 (4 Cir. 1973) [3], and, thus, it will be county funds and not state funds which are expended.

Having determined that an award of attorney's fees is proper and within the equitable power of the court in the instant action, and having decided that the Eleventh Amendment does not bar such an award, the court must determine an appropriate amount for attorney's fees. This court has in the past, in instances in which attorney's fees were to be awarded, consistently adhered to the policy that counsel should be paid concomitantly with the quality of representation provided the parties involved. In the instant case, this court is of the opinion that counsel for the plaintiff were exemplary in their representation and advocacy of the plaintiff's cause. The excellent briefs submitted by plaintiff's counsel were indicative of many hours spent by counsel in legal research of this somewhat novel issue. However, there is one element which the court must recognize in determining the amount of the fee here; any award of attorney's fees will, as noted, be taxed against the defendants in their official or representative capacity and, thus, such fees must be paid by the county treasury of Union County, and, ultimately, by the taxpayers who reside therein, Because of this fact, the court, in determining the amount of the attorney's fees, is compelled to be more conservative than in circumstances in which such an award was not to be paid from public funds.

In their motion for award of attorney's fees, counsel for the plaintiff avers that in litigation of the instant action, they incurred $1,369.58 in necessary expenses, and they seek reimbursement in this amount plus a fee of $13,158.00 on a basis of 354¼ hours of their time expended in handling this suit. The court feels it is proper to award expenses in the aforementioned amount to plaintiff's counsel. In addition, after a thorough review of the entire record, this court has determined that attorney's fees in the amount of $5,000.00 should be awarded to counsel for plaintiff. Therefore, it is

Ordered, that the plaintiff be, and he hereby is, awarded attorney's fees and expenses in the total amount of $6,369.-58 against the defendants herein in their representative capacity only and said defendants are hereby directed to pay said amount directly to the attorneys for the plaintiff.

And it is so ordered.

3. *Cf.*, Moye v. City of Raleigh, 4 Cir., 503 F.2d 631, 635, n. 11.