Anthony T. LEE et al., Plaintiffs,

United States of America, Plaintiff-Intervenor and Amicus Curiae,

National Education Association, Inc., Plaintiff-Intervenor-Appellant,

v.

MACON COUNTY BOARD OF EDUCATION et al., Defendants,

Florence City School System, Defendant-Appellee.

No. 71-3170.

United States Court of Appeals, Fifth Circuit.

March 6, 1972.

Solomon S. Seay, Jr., Montgomery, Ala., Jack Greenberg, New York City, Jerris Leonard, Asst. U. S. Atty. Gen., Civil Rights Div., Dept. of Justice, Washington, D. C., Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Gray, Seay & Langford, Montgomery, Ala., for plaintiff-appellant.

E. B. Haltom, Jr., Haltom & Patterson, Florence, Ala., for defendant-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

The displacement of educational staff in an endless saga of school desegregation in Macon County, Alabama, has again generated a *Singleton* objection. Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211, cert. denied, 396 U.S. 1032, 90 S. Ct. 612; 24 L.Ed.2d 530. See Lee v. Macon County Bd. of Educ., 5 Cir. 1971, 453 F.2d 1104 [1971]. Finding that the remedial measures designed in *Singleton* to insure constitutional respect for those displaced have not been followed, we reverse.

From 1959 to 1969, Mitchell served as head coach in football, basketball, and track at the all black Burrell-Slater School in Florence City, Alabama, directing an athletic program at the senior high level. He was, during that time, the only black head coach in the three senior high schools in the Florence City school system. At the end of the 1968–69 school term Mitchell was removed from his position after a court-ordered desegregation plan required the closing of the Burrell-Slater school. He was reassigned, for the 1969–70 school year, as a physical education teacher and assistant coach in football and basketball at the city's predominantly white Coffee High School with no diminution in compensation.

At the end of the 1969 football season, the head football coach at Coffee High resigned. Mitchell applied for the position but was not accepted. In late January of 1970, a white coach from outside the Florence City school system was hired. Near the end of the 1969–70 basketball season, Coffee's head basketball coach resigned and the high school principal became interim head coach. Mitchell applied for the position for the 1970–71 school year, but was again re-

jected in favor of a white applicant from outside the school system, who was selected at the commencement of the new school term.

Burrell-Slater was classified as a 2-A school in Alabama athletic rankings, which range from 1-A through 4-A, the classification depending upon the size of the student body. Burrell's enrollment was approximately 300. Coffee High was classified as a 4-A school, the statewide classification for the schools with enrollments over 900. Coffee's attendance was approximately 1000.

Mitchell's record as a coach at Burrell-Slater was not disparaged at trial. In his ten years at the school, his record in basketball was 209 victories, 46 defeats; in football, 55 victories, 19 defeats. At the 2-A level of competition, he was nominated for basketball coach of the year eight of those ten years, and won five times; he was chosen coach of the year in football once. These impressive achievements are complemented by the successful tournament participation of teams under his direction. He had no assistants.

■ Mitchell's sole contention on appeal is that the failure of the Florence City School Board to award him one of the head coaching positions created by the resignations of the 1969-70 term was a violation of the mandate of our *Singleton* decree.[1] In *Singleton*, this Court granted a limited preferential right to promotion, in the event of subsequent vacancies, to members of the pre-desegregation order school staff population who were dismissed, demoted, or displaced in the wake of school desegregation. *Singleton, supra,* 419 F.2d at 1218. The essence of the *Singleton* approach as a protection of the Fourteenth Amendment rights of those displaced is this: if a school official, administrator, teacher, principal, or coach is demoted or dismissed as a result of a desegregation order, and if his objective qualifications for his former position do not diminish in an absolute sense after the issuance of the order and his displacement, then he must be given the opportunity to assume any new position equal to the one he lost, prior to the offering of the position to any new applicants. This is the *per se* presumption of *Singleton* underlined in our recent decision in Lee v. Macon County Bd. of Educ., 5 Cir. 1971, 453 F.2d 1104 [1971] in which we reviewed a similar situation of "faculty fallout."

*Lee* clearly points out that the only way in which a board may pass over a member of the pre-desegregation order population in filling a vacancy in the system with responsibility equivalent to the one held by the displaced staff member is to "take that member out of the protective penumbra of *Singleton* altogether by establishing that the principal or teacher was not 'demoted' or 'dismissed,' or that the principal or teacher was not 'qualified,' . . ." *Lee, supra,* 453 F.2d at 1113. The trial court took this course and found that Mitchell had not been "demoted" within the meaning of *Singleton* because he lost no salary, and because the change of position was from head coach at a small school to assistant coach at a large school, playing in the state's most highly rated athletic conference, with an increase in responsibility upon coaching staff in the new level of competition. He was likewise found to be "unqualified" to assume the head coaching responsibilities of the 4-A athletic program because of a lack of "experience, training, and ability."

■ We find the Board's evidence insufficient to remove Mitchell's case from the ambit of the *per se* presumption of *Singleton*. The Board failed to show that Mitchell's responsibility was not diminished by his reassignment, nor was

1. While Mitchell's displacement occurred pre-*Singleton*, it is clear from the opinion of the district court that the vacant head coaching positions at Coffee High in football and basketball, for which Mitchell applied and was rejected, were filled post-*Singleton*. Therefore, it was incumbent upon the Board to apply *Singleton* criteria in making its selections.

there a showing of Mitchell's independent lack of qualification for the Coffee coaching positions.

The position of head coach in the eyes of his players, the school, and the community, places a heavy burden upon a coach. Upon his shoulders falls the ultimate responsibility for the success or failure of the team. There is no way to shift this burden to his assistants. Furthermore, the personal responsibility which he bears for the physical and moral development of those under his tutelage requires that he, not his assistants, answer directly to school and public officials in the event that development is questioned in method or result. Responsibility is the life of privilege. It is clear to us that Mitchell's reassignment as an assistant coach, regardless of the size of the athletic program of the larger high school, was a reduction in responsibility, "the real gist of demotion." *Lee, supra,* 453 F.2d 1104.

The burden of the Board in defining "unqualification" within the meaning of *Singleton* was made clear by this court in *Lee.* "In order to establish that a former [principal] was not 'qualified,' and therefore not within the protective penumbra of *Singleton,* a school board would have to establish the [principal's] lack of 'qualification' by means of objective and absolute criteria, not by means of comparison with another applicant or by means of administrative institution. The board must show the former [principal] to be independently unqualified to assume the new opening. And in order to fulfill that burden the board would have to establish quite clearly why one who was qualified prior to a desegregation order suddenly became unqualified after the order." *Lee, supra,* at 1110.

The Board has not shown Mitchell to be independently unqualified to assume either of the coaching vacancies that occurred in Florence City's High school in 1969–70. There was no evidence of Mitchell's inability to successfully assume the duties and responsibilities of the head coaching positions. While there was evidence of some increase of responsibility in the 4–A positions, in terms of size of staff and athletic program in general, nothing save "administrative intuition" is shown to support the view that Mitchell cannot assume that increased responsibility and be equally as successful as he was in his former position. Mitchell's lack of experience in 4–A competition cannot detract from his otherwise long and successful tenure as a head coach.

It is manifest that the predominant consideration of the Board in making its selection to fill the vacancies that occurred was the comparative ability of Mitchell and the applicants to whom the positions were eventually offered. Such a comparative evaluation is repugnant to the mandate of· *Singleton* and the principles enunciated in *Lee.*

■ Mitchell is entitled to a position as head coach in football or basketball at a senior high school within the Florence City school system, such a position having been wrongfully denied him in 1970. The fact that all such positions are now filled, necessitating a dismissal or a demotion to comply with this order, cannot prevent our grant of relief in equity "in vindication of the law and the Constitution." *Lee, supra,* at 1112.

We therefore remand this cause to the supervisory jurisdiction of the district court which has retained jurisdiction of this action by its own order in accordance with our decision in United States v. Hinds County School Board, 5 Cir. 1970, 433 F.2d 611, 618–619, with directions that the reinstatement ordered herein be achieved effective with the beginning of the 1972–73 school year, or earlier if appropriate.

Reversed and remanded with directions.