Yvonne Marie **BOYD** et al., Plaintiffs,

**United States of America, Plaintiff-Intervenor-Appellant,**

v.

**POINTE COUPEE PARISH SCHOOL BOARD et al., Defendants-Appellees.**

No. 71-3305.

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1974.

David L. Norman, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C.,

Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., Norman J. Chachkin, New York City, Murphy W. Bell, Baton Rouge, La., for plaintiff-appellant.

John F. Ward, Jr., Baton Rouge, La., Samuel C. Cashio, Dist. Atty., Maringouin, La., for defendants-appellees.

A. M. Trudeau, Jr., New Orleans, La., Murphy W. Bell, Baton Rouge, La., Jack Greenberg, Norman J. Chachkin, New York City, amici curiae.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

This school desegregation case has had a long and tortuous career, procedurally in the courts and out where the people live. The latest Court Order, from which the United States appeals, is reported, Boyd v. Pointe Coupee Parish School Board, 332 F.Supp. 994 (D.C.La. 1971). The District Court denied an application for supplemental relief, on the ground' that the school system had become unitary.

■ As of the entry of the Order, eight of the ten schools in the system did not meet *Singleton* ratio requirements [419 F.2d 1211 en banc (5 Cir., 1970)]. In one attendance area there was an all black school and another that was virtually all white.

We, therefore, must hold that the Pointe Coupee school system had not attained unitary status and that the Order of the District Court in this respect must be reversed, Ellis v. Board of Public Instruction of Orange County, Florida, 5 Cir., 1970, 423 F.2d 203; Mays v. Board of Public Instruction of Sarasota County, Florida, 5 Cir., 1970, 428 F.2d 809; Lemon v. Bossier Parish School, 5 Cir., 1971, 444 F.2d 1400; Beaumont Independent School v. Department of Health, Education and Welfare (1974) 855 F.2d 504.

A thumbnail sketch of prior events in this District may help put the case in more meaningful focus.

The schools of the Parish first came under the desegregation process in 1969. There was a mass exodus of white students to private schools. Public school attendance during the ensuing years has been as follows:

| Year | White | Black |
|------|-------|-------|
| 1968–69 | 2375 | 3643 |
| 1969–70 | 680 | No statistics |
| 1970–71 | 1232 | 3857 |
| 1971–72 | 1234 | 3688 |
| 1972–73 | 1535 | 3715 |
| 1973–74 | 1573 | 3606 |
| 1974–75 | 1605 | 3546 |

Thus, from the attendance low of 680 in 1969–70, white enrollment in five years has increased by approximately 250%, although it yet remains 770 below what it was when the desegregation process was begun. In any event, progress is obvious.

Statistics supplied for 1974–75 reveal the presence of three all black schools: LaBarre Elementary, 104 to 0; Rosenwald High, 1253 to 0; and St. Alma Elementary, 137 to 0. The other six schools are well integrated.

■ At Upper Pointe Coupee School, Grades K to 12, current statistics indicate that thirty classes are all black and thirteen are totally white, or almost so. This appears to be the result of a "track system" for pupil class assignment, but segregation by classroom is generally impermissible.

Our attention is directed to the fact that one of the schools is in a remote area of the Parish, separated from the remainder of the Parish by the Atchafalaya River swamp. The District Court will be entitled to examine the facts in this regard and to shape its remedy in the light of any unreasonable burdens as to this particular school.

The problems as to *Singleton* ratios appear to be mostly, if not altogether, solved. There are other plans afoot for improving the educational situation in the Parish, but we do not know what progress has been made.

The judgment of the District Court is reversed and the cause remanded for such further proceedings as may be reasonably necessary to bring Upper Pointe Coupee to unitary status.

Reversed and remanded.