**UNITED STATES of America, Plaintiff-Appellant,**

**Robert Love et al., Plaintiffs-Intervenors,**

**v.**

**GADSDEN COUNTY SCHOOL DISTRICT et al., Defendants-Appellees.**

No. 75–4294.

United States Court of Appeals, Fifth Circuit.

Oct. 6, 1976.

J. Worth Owen, Asst. U. S. Atty., Pensacola, Fla., Walter W. Barnett, Atty., John C. Hammock, Anita Marshall, Brian K. Landsberg, Dept. of Justice (Civil Rights Division) Appellate Section, Washington, D. C., for plaintiff-appellant.

Richard J. Gardner, Quincy, Fla., C. Graham Carothers, Tallahassee, Fla., for defendants-appellees.

Kent Spriggs, Tallahassee, Fla., Jack Greenberg, James C. Gray, Jr., New York City, for plaintiffs-intervenors.

Before BROWN, Chief Judge, and MORGAN and GEE, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In 1975 the Gadsden County School District, with the authorization of the district court, closed Midway Elementary School. Clarence Bryant, Midway's black principal for five years,[1] was transferred to the position of "assistant principal" of Havana Middle School. The United States, a party to the original desegregation suit in Gadsden County, charges that this transfer was a "demotion" within the meaning of *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969), *rev'd in part sub nom. Carter v. West Feliciana Parish School Board*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970) (reversal limited to timing of desegregation), and that it was accomplished without reference to the "nonracial objective criteria" required by *Singleton* for the selection of professional staff to be dismissed or demoted when staff reductions occur during conversion of a dual school system into a unitary one.

The district court, after an evidentiary hearing, held that Bryant's transfer was not a demotion. For the reasons stated herein, we reverse this finding as clearly erroneous. We also reject the School

---

1. Bryant had been a classroom teacher in the Gadsden County School District for fourteen years before becoming a principal.

Board's alternative arguments in support of the district court judgment. Finally, we remand with instructions that the School Board promulgate written nonracial objective criteria for selecting professional staff to be dismissed or demoted as a result of staff reductions during unification and that it reconsider Bryant's demotion in light of such criteria.

## I. BACKGROUND AND PROCEEDINGS BELOW.

In *Singleton* this court, following *Alexander v. Holmes County Board of Education*, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), held that school districts "may no longer operate dual systems and must begin immediately to operate as unitary systems." 419 F.2d at 1217. In a unanimous *en banc* opinion we directed that certain steps must be taken, and procedures followed, to accomplish the immediate desegregation of student bodies, faculties, and administrations. In the portion of this directive which is relevant to the instant case, we stated:

2. Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin.

3. If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district.

. . .

Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record

and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

'Demotion' as used above includes any re-assignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period.

419 F.2d at 1218.

On August 7, 1970 the United States District Court for the Northern District of Florida ordered the School Board of Gadsden County, Florida immediately to effectuate a plan for conversion to a unitary school system. Midway Elementary School (grades K–6) was covered by this order. The order also incorporated, verbatim, that portion of *Singleton's* directions with respect to dismissal and demotion of professional staff quoted above, including the requirement that the School Board develop and make publicly available nonracial objective criteria before any such dismissal or demotion took place. Record Vol. I at 8–11.

It is undisputed that the School Board, to this date, never has promulgated and made publicly available such criteria. Record Vol. III at 67 (stipulation of the School Board); *see Campbell v. Gadsden County District School Board*, 534 F.2d 650, 657 (5th Cir. 1976).

On May 6, 1975 the School Board petitioned the district court for modification of the 1970 desegregation order, requesting permission to close Midway Elementary School at the end of the 1974–75 school term and to transfer its students and staff to other schools.[2] On May 27 the district court entered an order granting the School Board's request. The United States then

2. The School Board alleged that the proposed closing was necessitated by the poor physical condition of Midway and a forthcoming short-age in operating funds, and that the closing was

moved to modify the May 27 order, alleging that the transfer of Midway's black principal Clarence Bryant to the position of "assistant principal" of Havana Middle School (grades 6–8) was a demotion within the meaning of *Singleton* and the 1970 desegregation order and that it was accomplished without reference to the nonracial objective criteria required by those authorities. The United States prayed that the School Board be ordered to apply such criteria in selecting which principal within the school system would be demoted as a result of closing Midway.[3]

The district court held an evidentiary hearing on the government's motion November 7, 1975. Bryant, who by now had undertaken his new post at Havana Middle School, testified at the hearing, as did Assistant Superintendent Grinelle Bishop and Superintendent M. D. Walker. At the conclusion of the hearing the district court ruled from the bench that the United States was not entitled to the relief sought because Bryant's transfer was not a demotion. The court therefore found it unnecessary to decide whether the requirement of reference to nonracial objective criteria had been violated.[4] The United States appeals.

## II. WAS BRYANT "DEMOTED" WITHIN THE MEANING OF *SINGLETON*?

 Under *Singleton*, a demotion occurs whenever a member of a school's professional staff is reassigned to a position where he or she receives less pay, *or* has less responsibility, *or* is required to use a lesser degree of skill than in his or her previous assignment.[5] 419 F.2d at 1218. As this court has emphasized, an increase in salary cannot, under *Singleton*, compensate for a decrease in responsibility, because,

> a truly dedicated educator, presumably the sort of educator that school boards would seek, will often minimize his monetary returns in exchange for factors that are more treasured by him as an administrator or teacher. The real gist of demotion is a reduction in responsibility, not in salary. . . . [A] school board . . . cannot prostitute the responsibility principle simply by offering higher salaries for substantially less responsible work to demoted employees.

*Lee v. Macon County Board of Education,* 453 F.2d 1104, 1109–10 (5th Cir. 1971); *see Campbell v. Gadsden County District School Board,* 534 F.2d 650, 656–57 (5th Cir. 1976); *Bassett v. Atlanta Independent School District,* 485 F.2d 1268, 1271 (5th Cir. 1973); *Lee v. Macon County Board of Education,* 456 F.2d 1371, 1373–74 (5th Cir. 1972). In this case, as in those cited above, the key question is whether the reassignment complained of resulted in a reduction of responsibility.[6] It was incumbent upon the School Board to show that it did not. *Lee v. Macon County Board of Education,* 456 F.2d 1371, 1373 (5th Cir. 1972).

At the hearing below, Bryant described in some detail the range of responsibility he

---

educationally sound, necessary for the improvement of public education, consistent with the requirements of a unitary school system and required to be done in the exercise of the Board's lawful responsibility to achieve efficient operation and general improvement of the district school system. Record Vol. I at 12–15.

**3.** There was no prayer for reinstatement of Bryant to a particular position, nor for backpay. *See, e. g., Campbell v. Gadsden County District School Board,* 534 F.2d 650 (5th Cir. 1976).

**4.** Record Vol. II at 55. The district court rejected, however, the School Board's contention that the closing of Midway and resultant transfer of Bryant were not subject to the require-

ments of *Singleton* at all. Record Vol. II at 49–50. *See* note 17 *infra.*

**5.** Or is asked to teach a subject or grade for which he or she is not certified or has not had substantial, reasonably recent experience. 419 F.2d at 1218.

**6.** In view of our disposition, we find it unnecessary to consider the government's argument that Bryant suffered a demotion because (the government alleges) his salary as assistant principal of Havana in 1975–76, although greater than as principal of Midway in 1974–75, was less than that of any principal in 1975–76. *See Campbell v. Gadsden County District School Board,* 534 F.2d 650, 656 (5th Cir. 1976).

had carried as principal of Midway Elementary School. He testified that he supervised all the school's instructional staff, consisting of nine to eleven teachers and six teachers' aides, and scheduled all the school's classes. He was also responsible for the discipline and safety of the school's 160 to 180 students.

In addition, Bryant performed a number of administrative duties. He compiled regular reports to the superintendent's office on the school's finances, attendance, and Title I program. He ordered textbooks for the school and was responsible for money collected from the school lunchroom and other sources. Bryant named the members of Midway's Title I advisory committee, and he met both with that group and with members of the school's PTA.

Bryant also described his current duties as assistant principal of Havana Middle School. According to his uncontradicted testimony, these duties consisted almost exclusively of checking school buses as they arrived in the morning and departed in the evening, and watching the children during their lunch periods and class breaks. He testified that as assistant principal of Midway he supervised no teachers, prepared no class schedules, and wrote no administrative reports.

7. Q [by the United States]. Does Mr. Bryant have any supervisory function in the school [Havana]?
 A [by Mr. Bishop]. Ms. Marshall, I can not answer this supervisory function [sic] because this is left to his assignment by his principal of the school.
 Q. Could you have no knowledge whether or not he supervises any teachers?
 A. No, I can not.
 Q. Prepares curriculum or any instruction?
 A. This depends on his working relationship with the principal of the school. As I stated in response to one of the questions, I can not visualize a principal and assistant principal completely separating their responsibilities because it's a joint effort in operation of any school. When it comes to questions of curriculum, class organization or schedule, if Havana Middle is a typical school then both men are involved in making these decisions.
 Q. Is Havana a typical school?
 A. In our system, yes.

Finally, Bryant testified that he would accept a principalship if one were offered, even if he had to take a salary decrease. When asked why he felt this way, Bryant replied:

One, I like being a principal. I also enjoy working with instructional staff, students. I also feel that along with being principal I have more decision making authority. I can make decisions on my own instead of as an assistant principal. I do not make any administrative decisions as such, but as a principal I would be able to make these decisions and supervise teachers and other things that go along with being principal of a school.

Record Vol. III at 75.

The only other testimony with respect to Bryant's responsibilities at Midway and Havana came from Assistant Superintendent Bishop. Bishop admitted on cross-examination that he did not know what particular responsibilities had been assigned to Bryant by the principal of Havana, who was not called to testify.[7] Bishop nonetheless testified that, in his opinion, Bryant carried greater responsibility as assistant principal of Havana than as principal of Midway, citing several general reasons for this opinion.[8]

Q. So you're saying that the principal and the assistant principal work together?
A. I'm sure that they do.
Q. They work together as far as supervising instructors, preparing curriculum and things of that nature?
A. How in depth they work together in preparing or working out the curriculum I have no way of knowing unless I was at the school day by day along with them.
Q. They might not work together, though, is that correct?
A. I suppose this is possible.
Record Vol. III at 98–99.

8. Bishop pointed primarily to the greater size of Havana than of Midway (Midway had 168 students in 1974–75, Havana had 493 in 1975–76); to what he termed the greater difficulty of working with middle-school children than with elementary-school children; to the fact that the assistant principal of Havana would be acting principal in the absence of the principal; and to his expectation that the assistant principal

■ After reviewing the evidence outlined above, the district court held that Bryant had not been demoted.[9] The United States argues that this finding was clearly erroneous. Fed.R.Civ.P. 52(a); *see McLaurin v. Columbia Municipal Separate School District*, 530 F.2d 661, 665 (5th Cir. 1976); *McCurdy v. Board of Public Instruction*, 509 F.2d 540 (5th Cir. 1975); *Lee v. Macon County Board of Education*, 470 F.2d 958, 960 (5th Cir. 1972). We agree.

As noted above, only Bryant testified as to his actual responsibilities as assistant principal of Havana. His testimony established that his primary duty was to ride herd over 593 youngsters during the times they were not in class. He no longer carried supervisory authority over teachers

or curriculum, nor administrative responsibility for school finances or programs. Although Assistant Superintendent Bishop expressed the opinion that Bryant's responsibilities had increased, we think that Bishop's own testimony, *see* note 7 *supra*, demonstrates that he did not have sufficient knowledge of Bryant's duties at Havana to speak to this point. His opinion therefore was entitled to little or no weight.[10]

■ In support of its holding, the district court cited *Bassett v. Atlanta Independent School District*, 485 F.2d 1268 (5th Cir. 1973), for the proposition that; "It is legally possible for the assistant principal of a larger school to have as much or more responsibility than the principal of a smaller school . . . ." Record Vol. II at 54. There is dicta in *Bassett* to support this view,[11] and

---

would confer with teachers with regard to class discipline. Record Vol. III at 91–93.

9. The district court also referred to a written school district "job description" for assistant principals. This job description, Plaintiff's Exhibit No. 1, simply lists the following "Duties and Responsibilities":

1. Be administratively responsible to the school principal
2. Serve as acting principal in the absence of the principal
3. Inform and advise the principal on matters of general operation of the school
4. Assist the principal in maintaining and developing good public relations and student and staff morale
5. Assist in the organization of a student council and other club activities
6. Assist in master schedule making by co-ordinating activities of the guidance department and principal and scheduling students
7. Assist the principal in carrying out assigned duties involving student activities, guidance department, library, curriculum, discipline and public relations
8. Assist the principal in drafting and implementing general school policies and regulations
9. Assume additional responsibilities assigned by state law, Department of Education Regulations, school board policies, contract provisions and principal assignment

The district court stated, "Mr. Bryant's testimony did not establish that he was performing work or had responsibilities in all of the areas *provided by that job description*." Record Vol. II at 51. Although the court appears to have relied on the job description in suggesting that Bryant's responsibilities might increase as time went on, *see* Record Vol. II at 54–55, we find no evidence in the record to suggest that

Bryant in fact would be permitted to undertake the "Duties and Responsibilities" listed. As Bishop testified, *see* text and note at note 7 *supra*, much depended on the willingness of Bryant's principal to delegate responsibility to him. There is also independent ground to doubt whether the duties expected to be performed by Bryant at Havana coincide with the school district's general description of the duties of an "assistant principal." *See* note 12 *infra*. Under these circumstances, we think the district court erred to the extent that it may have relied on speculation about responsibilities that Bryant might be given in the future, rather than on those that actually had been assigned to him. In the following text we discuss only the district court's finding "that Mr. Bryant has greater and not less responsibility *even at the present time* . . . ." Record Vol. II at 55 (emphasis added).

10. This case thus is unlike *Lee v. Macon County Board of Education*, 470 F.2d 958 (5th Cir. 1972), where we declined to disturb the district court's finding of no demotion because the "evidence developed at the hearing in the district court [was] in sharp conflict" and "the trial court was required to make credibility and factual choices." 470 F.2d at 960. Here, by contrast, Bryant's testimony as to his actual responsibilities was uncontradicted.

11. We disagree with the School Board's apparent reading of *Bassett* as reversing the district court's finding that transfer from principalship of a small high school to assistant principalship of a large high school was a demotion. *See* Brief for Appellee at 12–13.

In *Bassett* three high schools were merged into one, and the black principal of the former black high school was offered the position of

we do not disagree with the proposition in the abstract. We are also clear, however, that the mere fact of transfer from principalship of a school of 168 students to the nominal [12] post of assistant principal of a school of 593 students does not, in itself, establish that no demotion occurred. *See Lee v. Macon County Board of Education,* 456 F.2d 1371 (5th Cir. 1972).[13] Although the size of a school may have some bearing on the extent to which responsibilities are delegated among its various administrators, the focus in a case like this must remain on the responsibilities actually borne by the particular person in the particular position. We simply hold that, on the evidence before it, the district court erred in finding that Bryant carried as much responsibility as assistant principal of Havana as he had as

assistant principal of the new, unitary high school. He refused, insisting that only the principalship of a junior or senior high school would not be a demotion. The district court held that the assistant principalship of the high school would be a demotion, but that an elementary principalship would not be. It therefore ordered that Bassett be made an elementary principal, even though he previously had indicated that he would not accept such a position. It also ordered that Bassett receive back pay.

This court reversed and remanded on the ground that:

Money damages and reinstatement are inappropriate where a school board is told it has not violated plaintiff's rights by failing to offer him the job he wanted and contended he was entitled to [e. g., principalship of a junior or senior high school], but it was remiss in not offering him a job he said he did not want and contended he did not have to take [e. g., an elementary principalship].

485 F.2d at 1272. This court remanded the case to the district court to consider the advisability of ordering the school board to offer the first *principalship* of any kind to become available.

In the course of its opinion, this court made two remarks which tend to suggest that the district court would not have committed error if it had found Bassett was not demoted when he was transferred from being a high school principal to being a high school assistant principal:

There was testimony from respectable authority that the position of assistant principal in a large integrated high school was comparable or better than a job of principal of a small segregated high school, white or black.

principal of Midway. *See Campbell v. Gadsden County District School Board,* 534 F.2d 650, 656–57 (5th Cir. 1976); *Bassett v. Atlanta Independent School District,* 347 F.Supp. 1191, 1196–97 (E.D.Tex.1972), *rev'd on other grounds,* 485 F.2d 1268 (5th Cir. 1973).

### III. WAS *SINGLETON'S* REQUIREMENT OF OBJECTIVE NONRACIAL CRITERIA MET?

The School Board argues that even if the district court erred in finding no demotion, its ruling should be upheld because, the Board claims, Bryant was chosen for demotion by application of objective nonracial criteria of the kind required by *Singleton.* The School Board admits that it has not committed such criteria to paper and made

485 F.2d at 1271. And in denying attorneys' fees to Bassett, the court stated:

Although the District Court found that an assistant principalship in the high school would be a demotion from Bassett's former position, we think the record presents a close enough question on the point to remove the school system's offer from being unreasonable and obdurately obstinate.

485 F.2d at 1272. It is clear, however, that this court thought the district court did not err in holding that Bassett was demoted when he was transferred from principal of the smaller school to assistant principal of the larger school.

12. The government brought out on recross examination of Superintendent Walker that the title "assistant principal" of Havana was created the year that Bryant was reassigned to that post. Walker testified that in prior years Bryant's functions as "assistant principal" had been performed by someone referred to as "curriculum person" or "curriculum assistant." He did not know why the title was changed the year Bryant took over the job. Record Vol. III at 121–22.

13. There we reversed the district court's finding that a transfer from head coach of a high school of 300 students to assistant coach of a high school of 1000 students was not a demotion, stating: "It is clear to us that Mitchell's reassignment as an assistant coach, regardless of the size of the athletic program of the larger high school, was a reduction in responsibility, 'the real gist of demotion.'" 456 F.2d at 1374, *quoting Lee v. Macon County Board of Education,* 453 F.2d 1104, 1109 (5th Cir. 1971).

them available for public inspection prior to any demotion, as required by both *Singleton* and the 1970 district court desegregation order. It nonetheless points to Superintendent Walker's testimony below as establishing that such criteria were, in fact, used,[14] and it argues that for us to require compliance with the prior availability branch of *Singleton* in this case would be "to elevate form over substance." Brief for Appellee at 16.

We strongly disagree with the last assertion. *Singleton* requires not only substantive fairness, but also a form of procedural fairness, in choosing who is to be demoted when demotions become necessary. *Lee v. Macon County Board of Education*, 453 F.2d 1104, 1112–14 (5th Cir. 1971). The requirement of prior written criteria was intended to prevent the necessity for—and dangers of—ex post facto justification of decisions already made. *Cf. McLaurin v. Columbia Municipal Separate School District*, 478 F.2d 348, 352–53, *en banc court dissolved*, 486 F.2d 1049 (5th Cir. 1973). The requirement ensures that demotion decisions are made not only with fairness, but also with the appearance of fairness, to those whose careers are affected. The requirement also guarantees that meaningful review of demotion decisions is possible. Thus, in those cases where school boards have produced written criteria as required by *Singleton*, we have examined the criteria with utmost care to determine whether impermissible subjective or irrelevant factors

have crept into the evaluation process. *See, e. g., United States v. Texas Education Agency*, 459 F.2d 600, 604–08 (5th Cir. 1972); *Carter v. West Feliciana Parish School Board*, 432 F.2d 875, 877–79 (5th Cir. 1970); *cf. Ward v. Kelly*, 515 F.2d 908, 911 n.7 (5th Cir. 1975); *Adams v. Rankin County Board of Education*, 485 F.2d 324, 326–27 & ns.2–3 (5th Cir. 1973); *Armstead v. Starkville Municipal Separate School District*, 461 F.2d 276, 277–80 (5th Cir. 1972).

The reason for the *Singleton* requirement of prior written criteria is illuminated clearly by the very evidence upon which the School Board relies in this case. When Superintendent Walker was asked what qualifications he had considered in deciding which principal should be demoted, he answered:

> We considered the length of service, the size of the school, the certification. *I don't know that I could sit here and enumerate for you everything that was considered and involved in it but these are some of the things we considered.*

Record Vol. III at 112 (emphasis added). Neither meaningful review, nor confidence in the substantive fairness of the decision, is possible on such a record.

We do not find it necessary to decide in this case whether the absence of prior written nonracial objective criteria must, in every case, preclude further inquiry as to whether a dismissal or demotion in fact was made pursuant to nonracial objective criteria.[15] On the record before

---

14. The district court found it unnecessary to rule on this contention. *See* text at note 4 *supra.*

15. We do not find, nor have the parties cited, any case which squarely faces this issue. Although we have sometimes gone beyond the absence of prior written criteria to consider evidence bearing on whether nonracial objective criteria in fact were used, *see, e. g., Campbell v. Gadsden County District School Board*, 534 F.2d 650, 657 (5th Cir. 1976); *Ward v. Kelly*, 515 F.2d 908, 911 (5th Cir. 1975); *Lee v. Macon County Board of Education*, 463 F.2d 1174, 1175–76 (5th Cir. 1972), in other cases we have said or implied that a dismissal or demotion simply cannot be sustained if written criteria had not first been promulgated. *See, e. g.,*

*Thompson v. Madison County Board of Education*, 496 F.2d 682, 691 (5th Cir. 1974); *Smith v. Concordia Parish School Board*, 493 F.2d 8 (5th Cir. 1974), *cert. denied sub nom. Concordia Parish School Board v. Davis*, 420 U.S. 907, 95 S.Ct. 824, 42 L.Ed.2d 836 (1975); *McLaurin v. Columbia Municipal Separate School District*, 478 F.2d 348, 352, *en banc court dissolved*, 486 F.2d 1049 (5th Cir. 1973); *Thompson v. Madison County Board of Education*, 476 F.2d 676, 678 (5th Cir. 1973); *United States v. Texas Education Agency*, 459 F.2d 600, 606 (5th Cir. 1972). We find no case, however, where we *upheld* a dismissal or demotion as having been made pursuant to nonracial objective criteria, but where such criteria had not first been re-

us it is clear that Superintendent Walker was unable to recall with precision just what criteria he used to select Bryant for demotion. Under these circumstances we agree with the United States that the appropriate remedy is to remand the case to the district court with instructions that the School Board promulgate its long-delayed *Singleton* criteria and submit them to that court for approval or modification.[16] In drawing these criteria, the School Board and district court might find it useful to consider the sample criteria set out in *United States v. Texas Education Agency*, 459 F.2d 600, 607–08 n.3 (5th Cir. 1972). After the criteria have been approved the School Board, applying those criteria, shall select the principal to be demoted as a result of the closing of Midway Elementary School.[17]

REVERSED and REMANDED.

---

duced to writing and made available for public inspection. *But cf. Lee v. Macon County Board of Education*, 470 F.2d 958, 959–60 (5th Cir. 1972).

**16.** We have followed this course in the past. *See, e. g., United States v. Texas Education Agency*, 459 F.2d 600, 607 (5th Cir. 1972); *Smith v. Concordia Parish School Board*, 445 F.2d 285, 286 (5th Cir. 1971).

**17.** The School Board also argues that the district court erred in applying the *Singleton* rules to this case at all, based on the Board's apparent claims that unification of the Gadsden County school system is complete and that the closing of Midway was not related to desegregation of the school system. *See* note 2 *supra*. While it is true that the *Singleton* standards do not apply after a formerly segregated school system has "for several years operated as a unitary system," *Lemon v. Bossier Parish School Board*, 444 F.2d 1400, 1401 (5th Cir. 1971); *see, e. g., Boyd v. Pointe Coupee Parish School Board*, 505 F.2d 632 (5th Cir. 1974); *Thompson v. Madison County Board of Education*, 496 F.2d 682, 684–88 (5th Cir. 1974); *McLaurin v. Columbia Municipal Separate School District*, 478 F.2d 348, 352, *en banc court dissolved*, 486 F.2d 1049 (5th Cir. 1973); *Ellis v. Board of Public Instruction*, 465 F.2d 878, 879–80 (5th Cir. 1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), or where staff reductions occurring during unification demonstrably are not "desegregation related," *see Lee v. Chambers County Board of Education*, 533 F.2d 132, 135–36 (5th Cir. 1976); *Pickens v. Okolona Municipal Separate School District*, 527 F.2d 358, 361–63 (5th Cir. 1976); *cf. Blunt v. Marion County School Board*, 515 F.2d 951, 958 (5th Cir. 1975); *but see Ellis v. Board of Public Instruction*, 465 F.2d 878, 880–81 (5th Cir. 1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), the School Board points to no evidence on these issues to support its argument that the district court erred.

Defendants' own Exhibit No. 2 indicates that Midway Elementary School, in its last year of operation, had an enrollment of 161 black students and only 7 white students. On its face, this hardly demonstrates that unification was complete when Bryant was demoted. *See*

*Boyd v. Pointe Coupee Parish School Board*, 505 F.2d 632 (5th Cir. 1974); *Thompson v. Madison County Board of Education*, 496 F.2d 682, 684–88 (5th Cir. 1974); *Ellis v. Board of Public Instruction*, 465 F.2d 878, 880 (5th Cir. 1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). The district court concluded that, "[I]t can not yet be said as a matter of law integration has been fully achieved," Record Vol. II at 50, and on the record before us we cannot disagree.

We also think that the district court's statement that Midway "was closed and allowed to be closed because the closing was economically sound and practical *and not to implement the desegregation order in this case*," Record Vol. II at 49 (emphasis added), heavily relied upon by the School Board, does not foreclose the possibility that the financial and educational desirability of closing Midway was a *result* of desegregation:

> We realized at the time of [the *Singleton*] decision that achievement of a unitary school system often results in elimination of duplicative jobs needed only so long as the local authorities maintain a wasteful and unlawful dual educational system. Moreover, we recognized that in some instances parents reacting to desegregation would withdraw their children from public schools, thus further limiting the personnel required for school operations. In order to prevent the hardship caused by the loss of these superfluous jobs from falling disproportionately on black teachers and administrators, this Court established specific criteria to govern reductions occurring during conversion from a dual to a unitary school system.

*Pickens v. Okolona Municipal Separate School District*, 527 F.2d 358, 361 (5th Cir. 1976). Because the School Board made no record below bearing on these and similar considerations with respect to the origin of the reasons for closing Midway, *see Lee v. Chambers County Board of Education*, 533 F.2d 132, 135 (5th Cir. 1976), and because we assume that the district court is intimately familiar with the progress of school desegregation in Gadsden County since that court's 1970 desegregation order, we decline the Board's invitation to hold that the district court erred in holding *Singleton* applicable in this case.