**Louella PATTON, Plaintiff-Appellant,**

v.

**C. H. KING et al., Defendants-Appellees.**

**No. 76–2299**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1977.

Rehearing and Rehearing En Banc Denied Feb. 24, 1977.

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

John L. Maxey, II, Jackson, Miss., for plaintiff-appellant.

George P. Hewes, III, William R. Wright, Jackson, Miss., for defendants-appellees.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Louella Patton, plaintiff below, appeals from the district court's grant of summary judgment in favor of defendants. We reverse and remand.

## I. FACTS

In April, 1975 the district court for the Southern District of Mississippi entered an agreed order in a continuing desegregation suit restructuring all elementary schools in the Jackson Municipal Separate School District. This restructuring consisted of consolidating schools formerly housing grades 1–4 with schools housing grades 5–6, closing some schools, and reopening some others.

A committee of teachers and administrators was formed to formulate policies for teacher reassignments necessitated by the order. Under the committee's plan, all elementary teaching positions which were to be located at a school different from the previous year (a total of 301 positions) were declared vacant. Any teacher in the district could apply to transfer to a restructured school. The plan called for successive rounds of applications to transfer; on the first round the principal of the restructured school had discretion to accept or reject applicants, but on successive rounds the principal could reject applications only if there were more applicants than positions. The district court order required that the restructured schools maintain a $^{47}/_{53}$ ratio of black to white teachers.

One of the schools to be restructured was the Watkins Center for Exceptional Children, in 1974–75 a school for handicapped and retarded children. For 1975–76 Watkins' operations were to be moved to Morrison School (formerly housing grades 1–6) and Watkins was to reopen housing grades 1–6. Thus, under the teacher reassignment plan, all positions at Morrison were declared vacant and open for transfer for 1975–76.

The plaintiff in this case, Louella Patton, had taught a class of Trainable Mentally Retarded (TMR) children at Watkins from 1972 to 1975. After the restructuring order, Patton and eleven other teachers at Watkins applied in the first round to teach

at Morrison in 1975–76. Mrs. Pauline Williams, who had been principal of Watkins and was to be principal of Morrison, accepted six of these applications (those of four black and two white teachers). In the second round seven teachers applied to teach at Morrison—the six from Watkins who had not been accepted in the first round, and Mrs. Cora Edwards. Mrs. Edwards had taught TMR's at Watkins from 1972 to 1974 and Educable Mentally Retarded (EMR) children at Walton School in 1974–75. Of these seven applicants, five were white and two (Patton and Edwards) were black; thus, to maintain the required racial balance, at that point only one of the two black applicants could be chosen. Principal Williams chose Edwards over Patton, and Patton was reassigned to teach EMR's at Marshall School.

Patton filed a complaint in federal district court under 42 U.S.C. § 1983 against the school district's board of trustees, its superintendent, and Williams, alleging that Williams' failure to choose her to teach TMR's at Morrison in 1975–76 violated her constitutional rights and praying declaratory, injunctive, and monetary relief. As we read the complaint, Patton proceeded on three theories:

(1) That Williams' failure to choose Patton, and Patton's resultant transfer from teaching TMR's at Watkins to teaching EMR's at Marshall, was a "demotion" in retaliation for Patton's membership in and activities on behalf of Local 3229 of the American Federation of Teachers, an affiliate of the AFL–CIO.

(2) That the alleged demotion violated the equal protection clause of the fourteenth amendment, as implemented in *Singleton v. Jackson Municipal Separate School District,* 419 F.2d 1211 (5th Cir. 1970).

(3) That the alleged demotion was arbitrary and capricious, depriving Patton of an interest in liberty under the due process clause of the fourteenth amendment.

The defendants filed affidavits of Williams and others and moved for summary judgment. Williams' affidavit stated that she had chosen Edwards over plaintiff because Edwards was more qualified and because plaintiff frequently had engaged in disputes with staff members and had been absent from school excessively. Plaintiff opposed the motion and filed counter-affidavits and depositions evidencing Williams' previous hostility to plaintiff's union activities. Both parties also filed material with regard to the differences between teaching TMR's and EMR's.

The district court granted defendants' motion for summary judgment in a written opinion (Appendix at 134–45). We read that opinion to hold that, because the teacher reassignment procedure was not arbitrary, no due process violation had occurred. It also held that Patton's reassignment was not a "demotion"; hence, no *Singleton* violation had occurred. Finally, it held that because there was no "demotion," no "retaliation" for the exercise of first amendment rights could have occurred; hence the court held that the factual dispute over whether Williams had refused Patton's application to teach at Morrison on account of Patton's union activity was not "material."

## II. DISCUSSION

In the present posture of the case, the question for this court is whether the district court erred in holding that there was no genuine issue as to any material fact and that, on the undisputed facts, defendants were entitled to prevail as a matter of law. Fed.R.Civ.Pro. 56. The essence of the district court's holding appears to have been that plaintiff had suffered no injury by virtue of her reassignment; hence, the court thought she had failed to state a claim.

Affidavits and depositions presented by both parties agreed that certification by the State of Mississippi to teach mentally retarded children would permit a teacher, under state law, to teach either TMR or EMR children. They also agreed that different skills were required to teach each category; TMR's, who have IQ's between 25 and 50, are taught very simple skills and socializa-

tion to enable them to survive everyday life, while EMR's, with IQ's between 50 and 75, are taught to read, write, and figure. There was agreement that most formal college classes in mental retardation concentrate on skills needed to teach EMR's, not TMR's.

There was disagreement, however, as to whether a teacher who had been working solely with TMR's easily could make the transition to working with EMR's. *Compare, e. g.,* Deposition of Cora Edwards, App. at 124, *with* Affidavit of Dr. Benjamin L. Brooks, App. at 133. One deponent testified that experience as well as formal training was a factor in success in working with a particular class of retarded children. Deposition of Glenn Bass, App. at 107–08. Dr. Brooks' affidavit stated (App. at 133):

> [I]t is a rare person who has been able to acquire all the skills necessary to transfer back and forth from a TMR and EMR classroom merely from the experiences obtained in a college level Special Education training program. As complex as the planning for the educable is, the planning for the TMR is even more complicated and generally only mastered through experience and direct exposure.

With this material in the record, we think the district court erred in holding there was no issue of fact as to whether plaintiff's reassignment from teaching TMR's to teaching EMR's was a "demotion" within *Singleton.* Under *Singleton,* "demotion" includes reassignment to a position

> which requires a lesser degree of skill than did the assignment [the teacher] held previously, or . . . under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

419 F.2d at 1218. The district court appears to have thought that the fact that the same certification is required to teach TMR's and EMR's was dispositive of the demotion issue, emphasizing the "same certification" branch of *Singleton. See* Opinion of the District Court, App. at 144. The court did not speak to apparent factual conflicts raised by the affidavits and the depositions over the "greater skills" and "recent experience" branches of that definition.

Plaintiff had never before taught EMR's; all her five years of experience in teaching mentally retarded children had been with TMR's. Thus there is an issue as to whether plaintiff was "asked to teach a subject . . . other than one for which . . . [she] has had substantial experience within a reasonably current period."[1] In addition, Dr. Brooks' affidavit, quoted above, appears to raise an issue of fact as to whether greater skills are required to teach TMR's than EMR's. Because *Singleton* is phrased in the disjunctive, the apparent factual conflicts over those branches are material in this case and preclude summary judgment.

We therefore reverse summary judgment and remand to the district court. Given the undeveloped state of the facts, we find it unnecessary at this juncture to decide whether *Singleton* applies in this situation, *see United States v. Gadsden County School District,* 539 F.2d 1369, 1378, n.17 (5th Cir. 1976), or to decide just what quantum of injury in retaliation for the exercise of first amendment rights, short of dismissal, suffices to trigger a cause of action. *Cf. Washington v. Board of Education,* 489 F.2d 11 (7th Cir. 1974); *Orr v. Thorpe,* 427 F.2d 1129 (5th Cir. 1970).

REVERSED and REMANDED.

---

1. We do not hold that EMR education *is* "a subject . . . other than" TMR education. We merely hold that the evidence concerning the different matter taught to EMR and TMR students, and the different skills required to teach it, sufficed to raise an issue of fact on this point.